## PEGGY LAWTON KITCHENS, INC. *vs*. TERRENCE M. HOGAN & others.[1]

Norfolk. October 4, 1988. — January 9, 1989.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Contempt. Injunction. Trade Secret.*

A proceeding for contempt was properly dismissed where the judge after a full hearing correctly concluded that the defendants did not violate the clear language of a permanent injunction that prohibited them only from producing cookies containing the exact same ingredients in the exact same proportions as the plaintiff's secret formula. [734-735]

CIVIL ACTION commenced in the Superior Court Department on November 27, 1981.

A proceeding for contempt, commenced on December 20, 1983, was heard by *David H. Kopelman*, J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Mitchell J. Sikora, Jr.*, for the plaintiff.

*Sylvia Katsenes* (*William A. Katsenes* with her) for the defendants.

O'CONNOR, J. Peggy Lawton Kitchens, Inc. (Kitchens), manufactures and sells chocolate chip cookies. In November, 1981, Kitchens brought an action against the defendants in this case (Hogans) alleging that the Hogans had stolen a secret chocolate chip cookie recipe from Kitchens and were manufacturing and selling cookies using that formula. No damages were awarded as a result of that action, but the Hogans were permanently enjoined from "making, baking and selling chocolate chip cookies which use or utilize [Kitchens'] formula."

---

[1] Ruth A. Hogan and Hogie Bear Snacks, Inc.

The Hogans appealed, and the Appeals Court affirmed the judgment. 18 Mass. App. Ct. 937 (1984). The Appeals Court reasoned that, although the "injunction against use of [Kitchens'] recipe was permanent and without limit as to area," the judge was not "bound to calibrate a more precise area and duration for an injunction as limited as the one imposed. It does not drive Hogan or Hogie Bear Snacks, Inc., out of the cookie business; the injunction forbids only use of Kitchens' precise formula." *Id.* at 940.

The present case is an appeal from the dismissal, by a judge in the Superior Court, of a petition of contempt filed by Kitchens alleging that the Hogans had violated the permanent injunction. We granted Kitchens' application for direct appellate review. We affirm the decision below dismissing the petition for contempt.

The contempt action was fully tried. The judge made numerous subsidiary findings which Kitchens does not challenge. We briefly summarize the findings we deem material. Approximately one year after Lawton Drayer Wolf (Wolf), one of the founders of Kitchens, had begun producing chocolate chip cookies, he developed "a distinctive twist" by incorporating walnut shavings, also called "chaff, nut meal, nut dust, and nut crunch," into the cookie mix. After that, "sales took off immediately. [The nut meal] did to the cookies what butter does to popcorn, or salt to a pretzel. It really made the flavor sing."

The judge made findings with respect to the ingredients and proportions thereof used by Kitchens and by the Hogans, which we need not repeat. He found that many of the ingredients used by Kitchens and the Hogans are common to most commercially made chocolate chip cookies, but no commercial cookie manufacturer, except Kitchens, uses nut meal. He found that "it is the nut meal . . . which gives Peggy Lawton Chocolate Chip Cookies [their] unique and distinctive flavor."

Following the injunction, according to the judge's findings, the Hogans did not use nut meal in their chocolate chip cookies, and they added four ounces of vanilla per batch of approximately 1,100 cookies. Kitchens did not use vanilla in its

cookies. "As a result of this substitution, Hogan's cookies which previously had a nutty taste similar to Peggy Lawton, thereafter developed a distinctive vanilla flavor." The judge also determined that the Hogans altered their formula in other ways that affected their chocolate chip cookies' texture and taste.

Although Kitchens does not challenge those findings, it does challenge as "clearly erroneous" the judge's factual conclusion, apparently based thereon, that "Hogie Bear does not make, bake and sell chocolate chip cookies which use or utilize the Peggy Lawton formula." Kitchens also challenges the judge's conclusion that Kitchens had not established the Hogans' contempt of the injunction against their "making, baking and selling chocolate chip cookies, which use or utilize [Kitchens'] formula."

The principal thrust of Kitchens' argument is that its chocolate chip cookie formula, which includes not only specific ingredients but also the proportions in which those ingredients are used, has been adjudicated a trade secret, and that, therefore, others rightfully may neither manufacture nor sell competing products derived from it. Kitchens argues that the evidence at trial inescapably showed that the Hogans "used" Kitchens' formula even though, as the judge found, they modified it in numerous ways. The contention is that, despite the modifications, the Hogans did not produce an "independent product," but rather produced the "substantial equivalent" of Kitchens' product — a product substantially derived from Kitchens' formula. It is precisely that conduct, Kitchens says, that the injunction against "us[ing] or utiliz[ing]" its formula was designed to prevent.

Kitchens presents sound arguments. Nevertheless, we must focus primarily on the language of the injunction. Trade secret law, and the conduct which under that law may be the basis of liability to pay damages is not controlling. "To constitute civil contempt [as is alleged here], there must be a clear and undoubted disobedience of a clear and unequivocal command." *Manchester* v. *Department of Envtl. Quality Eng'g*, 381 Mass. 208, 212 (1980), quoting *United Factory Outlet, Inc.* v. *Jay's*

*Stores, Inc.*, 361 Mass. 35, 36 (1972). The Appeals Court's statement, quoted earlier in this opinion, that "the injunction forbids only use of Kitchens' precise formula," would seem to suggest that, at least in the view of the Appeals Court, the injunction goes no further than to command the Hogans not to produce cookies containing the exact same ingredients in the exact same proportions as Kitchens' cookies. Whether the command does indeed go further and, if so, how much further it goes, is not clear. While perhaps the injunction reasonably could be construed as forbidding the Hogans to manufacture, bake, and sell chocolate chip cookies made from a formula "substantially derived" from Kitchens' formula, the injunction does not "clearly and unequivocally" do so. Furthermore, even if the injunction had expressly prohibited the Hogans from producing cookies according to a formula "substantially derived" from Kitchens' formula, those terms are too imprecise to justify, let alone require, a finding of contempt in the circumstances of this case. Therefore, we affirm the decision of the judge in the Superior Court dismissing the plaintiff's contempt petition.

*So ordered.*