205 CORPORATION d/b/a The Tavern Restaurant, Appellee,

v.

Ron BRANDOW; Ronald H. Smith d/b/a Mustards Restaurants; S & L Food Services, Inc.; and Mustards, Inc., Appellants.

No. 92–2009.

Supreme Court of Iowa.

May 25, 1994.

Brian L. Campbell and Brian M.F. Kennedy of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

G. Brian Pingel and Brenton D. Soderstrum of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellee.

HARRIS, Justice.

There are a number of assignments in defendants' appeal following a plaintiff's verdict in this suit involving trade secrets. Although we think the evidence supports an

award, we agree with defendants that the judgment should be modified as duplicative.

Plaintiff 205 Corporation hired Ron Brandow to manage The Tavern, a restaurant it owns and operates in West Des Moines, Iowa. At the time 205 Corporation provided Brandow with recipes for The Tavern's pizza sauce, pizza crust, and grinder sandwiches. The secret recipes for pizza sauce and grinders were known only to 205 Corporation's president, Charles Celsi, and by the former owner of The Tavern. Several current and former employees knew the pizza crust recipe.

205 Corporation later terminated Brandow's employment. Brandow subsequently provided pizza and grinder recipes to his new employer, Mustards Restaurant, in Windsor Heights, Iowa. 205 Corporation then sued Mustards[1] and Ron Brandow personally. 205 Corporation claimed misappropriation of trade secrets by Mustards and Brandow under Iowa Code chapter 550 (1991). 205 Corporation also alleged Brandow breached his duties of loyalty and to conceal The Tavern's recipes and alleged that Mustards induced Brandow's breaches.

The trial jury was instructed to consider defendants' liability on three issues and return verdicts accordingly. Before the verdicts were returned the jury inquired whether claim one was the sum of claims two and three. Before the trial court could respond verdicts were returned as follows:

**Claim one** (against all Defendants)

Misappropriation of trade secrets pursuant to the [uniform trade secrets Act]

| | |
|---|---|
| Verdict | $145,000 |
| Actual damages | $50,000 |
| Brandow | $10,000 |
| Mustards | $40,000 |
| Unjust Enrichment | $95,000 |
| Brandow | None |
| Mustards | $95,000 |
| Punitive damages | Authorized |

---

1. 205 Corporation actually sued Mustards, Inc., the owner of several Mustards restaurants, and S & L Food Services, Inc., the owner of the Windsor Heights Mustards. The suit also named Ronald Smith, the sole shareholder of both corporations. For simplicity these corporations and Smith will be referred to in the singular as Mustards.

In ruling on 205 Corporation's posttrial motion for punitive damages, the court declined to impose punitive damages under this count.

[Claim two was against Brandow only. For reasons to be explained claim two is not relevant to the determination of the appeal.]

**Claim three** (against Mustards only) Inducement of breach of duty of loyalty of integral duty not to disclose confidential information

| Verdict | $195,000 |
| --- | --- |

| | |
| --- | --- |
| Actual damages | $50,000 |
| Unjust enrichment | $95,000 |
| Punitive damages | $50,000 |

The court enjoined defendants' use of the recipes in the future but denied 205 Corporation's motion for attorney fees.

All defendants appeal, although Brandow has since filed a disclosure that he has taken bankruptcy. He has not filed a brief and has therefore waived and abandoned his appeal. 205 Corporation is entitled to an affirmance as to him. *Ellwood v. Mid States Commodities, Inc.,* 404 N.W.2d 174, 178 (Iowa 1987).

■ I. Under Iowa's trade secret Act the owner of a trade secret may obtain damages, including actual losses and unjust enrichment, for misappropriation of the secret. Iowa Code § 550.4. This provision also allows the court to enjoin the further use of the trade secret. Iowa Code § 550.3. Under chapter 550, a trade secret means:

[I]nformation, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4). Mustards contends that less than substantial evidence supported the jury's finding that the recipes derived independent economic value and were the subject of reasonable efforts to maintain

their secrecy, both being requirements for recovery under chapter 550.

It is suggested that the common-law understanding of trade secrets should guide our interpretation of section 550.3(a). We think not; the words of the statute are plain and unambiguous. *See* Iowa R.App.P. 14(f)(13) ("court searches for legislative intent as shown by what the legislature said, rather than what it should or might have said.").

205 Corporation had to show it derived economic value because the recipes were unknown to, and not readily ascertainable by, a person who would profit from their disclosure or use. 205 Corporation offered the following evidence in support of this showing.

1. The value of the recipes was attested to by The Tavern's owner, Charles Celsi. He purchased the restaurant for $455,000 and testified that the most valuable assets purchased were the recipes.

2. There was testimony by 205 Corporation's expert, a department chairman of the Culinary Institute of America, and defendants' expert that they could not determine the exact amount of specific ingredients found in the recipes without access to prohibitively expensive chemical analysis machinery. Even if such a machine was used, both experts testified it could not determine the underlying process by which the pizza and grinders were assembled.

3. There was independent evidence of The Tavern's popularity as shown by several highly-prized local food awards.

Other evidence bolstered a finding that the recipes were not generally known or ascertainable. While the core ingredients were determinable with resort to a rare and expensive machine, the exact assembly and baking processes used could not be determined.

■ Beyond independent economic value, 205 Corporation was required to show that it expended reasonable efforts under the circumstances to maintain secrecy of their recipes. Iowa Code § 550.2(4)(b). Defendants concede the sauce recipes were subject to these precautions but argue the crust recipes

were not, and indeed a closer question is presented on this point.

205 Corporation showed that, when it purchased The Tavern, the former owner testified that none of the recipes were used by or given to the public. Brandow was told the recipes were confidential and were not to be left anywhere readily accessible to others, and all recipes, including the crust recipe, were in a safe deposit box at all times.

But realities of crust preparation differed from those involved with sauce preparation to an extent requiring a different confidentiality procedure. In order to maintain freshness the crust had to be prepared daily. The kitchen employees who prepared the dough were thus necessarily made aware of the recipe. Accordingly, in contrast to other recipes, the crust recipe became known to all employees. Evidence was in conflict on the issue whether these employees considered the crust recipe confidential.

The key to this second element of the trade secret test is found in the words "reasonable under the circumstances." Given the evidence of the special needs inherent in crust preparation, we think substantial evidence supported the conclusion that plaintiff's secrecy procedures were reasonable under the circumstances.

■ II. In a separate assignment Mustards asserts that 205 Corporation's recovery on claim one (misappropriation of a trade secret under chapter 550) was duplicative of its recovery on claim three (inducement of breach of duty). There is a threshold preservation-of-error question on this assignment. 205 Corporation points out that defendants only raise this challenge in their motion for a judgment notwithstanding the verdict. We have held that: "[a] motion for judgment notwithstanding the verdict must stand or fall on grounds urged in the movant's earlier motion for directed verdict." *Ragee v. Archbold Ladder Co.*, 471 N.W.2d 794, 798 (Iowa 1991). Because defendants failed to raise the issue in their motion for a

directed verdict, 205 Corporation claims waiver of this issue. But, on identical facts, we recognized an exception to the general preservation rule. When verdict forms containing alternative claims are submitted to the jury no duplication, and therefore no error, can arise until the verdict is reached. *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 924–25 (Iowa 1978). We conclude error was preserved and the question is properly before us.

We have said that a "successful plaintiff is entitled to one, but only one, full recovery, no matter how many theories support entitlement." *Clark–Peterson Co. v. Independent Ins. Assocs.*, 514 N.W.2d 912, 915 (Iowa 1994); *Teamco*, 271 N.W.2d at 925.

■ We think claims one and three are alternative theories for recovery for the same injury. The identical injuries were claimed under each theory. Judgment on claims one and three, to the extent of the allowance of the lesser award [2] (claim one), are clearly duplicative. On remand the judgment should be amended so as to allow recovery for claim three, but not claim one.

■ III. Defendants contend that chapter 550 was adopted as an exclusive remedy and preempts related causes of action with respect to trade secrets. To a large extent this contention is rendered moot by what we have said regarding duplicative recoveries. The question is viable though because the jury allowed $195,000 on claim three (a common-law claim) and $145,000 on claim one (a chapter 550 claim). If chapter 550 preempts all recoveries then the total recovery should be limited to $145,000, not the $195,000 we have mentioned.

Before adopting the uniform trade secrets Act, the legislature considered and chose to omit section seven of the uniform act, which would have specifically displaced all other trade secret recoveries. We think it is clear that the omission was deliberate. We have moreover said that "statutes will not be so

**2.** 205 Corporation's recovery on claim one was joint and several; collection of a judgment on that claim could also have been sought against Brandow who, as we have noted, has filed for bankruptcy. In another case a plaintiff in 205

Corporation's circumstances, for good practical reasons, might well choose to seek to enforce a judgment on a lesser rather than a larger recovery. The question seems uninvolved here though, and we give it no consideration.

interpreted as to deprive one common-law right unless the statute unequivocally so states." *Price v. King,* 259 Iowa 921, 924, 146 N.W.2d 328, 330 (1966). Chapter 550 has not preempted all tort theories involving trade secrets.

IV. Defendants also challenge sufficiency of the evidence to support the damage award. We have already said that 205 Corporation is entitled to recovery only on claim three (inducement of breach of duty). The challenge to evidence on damages will be considered accordingly.

■ We have held that recovery will be denied when evidence of damages is speculative or uncertain. *Basic Chems., Inc. v. Benson,* 251 N.W.2d 220, 223 (Iowa 1977). But if uncertainty lies only in the amount of damages, some recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated. *Id.*

■ Evidence of actual damages came from the testimony of Charles Celsi, 205 Corporation's sole owner. He testified to damage in the amount of $495,000, including the $455,000 paid to acquire the restaurant and $40,000 expended to retain certain ownership rights. Celsi stated that he paid $495,000 primarily to acquire the recipes, as most equipment required replacement. From this, he argued, and apparently the jury inferred, that his investment had lost some or all of its value as a result of misappropriation. No other evidence of lost profits or other damage was presented.

On the basis of this evidence the jury awarded (on claim three) actual damages in the amount of $50,000 and unjust enrichment damages in the amount of $95,000. We think the foregoing evidence was sufficient to support these awards.

Although defendants contend otherwise, the unjust enrichment award was not limited because the defendants' business showed a $5800 net loss for the period following acquisition of the recipes. The jury was entitled to find that, but for the tortious conduct, defendants' loss would have been $95,000 (the amount allowed for unjust enrichment)

greater. *See Basic Chems.,* 251 N.W.2d at 233. The challenge is without merit.

■ V. Under authority granted in Iowa Code section 550.3, the trial court granted 205 Corporation's request for a permanent injunction, as follows:

> The defendants and their officers, agents, and employees, are hereby permanently enjoined and restrained from using, divulging, and communicating to anyone else any of the trade secrets or confidential information which includes all or any part of the plaintiff's recipes for pizza sauce, pizza dough or grinders or any substantially similar recipes thereto.

■ Defendants challenge the dimensions of the injunction, not the court's authority to order one. The injunction is assailed as improperly vague and overly broad, both in scope and duration. Defendants point to the "substantially similar" language and the permanent nature of the injunction. It is clear that an injunction should be limited to the requirements of the case. *Foods, Inc. v. Leffler,* 240 N.W.2d 914, 924 (Iowa 1976) (citing 42 Am.Jur.2d *Injunction* § 297 (1969)). "The acts or things enjoined should be definitely specified, and they should be set forth with certainty and clearness so that persons bound by the decree may readily know what they must refrain from doing without speculation or conjecture." 42 Am. Jur.2d *Injunction* § 296, at 1095.

In defendants' "substantially similar" challenge they contend all pizza recipes use similar ingredients. Defendants argue the injunction thus effectively prohibits them from selling any pizza, or at best requires them to speculate on the meaning of the prohibition.

Similar language was disallowed by other courts. *American Can Co. v. Mansukhani,* 742 F.2d 314, 333 (7th Cir.1984) (disallowing injunction forbidding sale of inks "compositionally similar" to plaintiff's inks and "attributed principally" to use of plaintiff's trade secrets as impermissibly vague); *Peggy Lawton Kitchens, Inc. v. Hogan,* 403 Mass. 732, 532 N.E.2d 54, 56 (1989) (vacating injunction that restricted the sale of cookies, "substantially derived" from plaintiff's formula). There is however substantial contra authori-

ty. *See, e.g., Mead Corp. v. Lane,* 54 Ohio App.3d 59, 560 N.E.2d 1319, 1327–28 (1988) (allowing injunction that prohibited use of formula for jet print ink, purge fluid, and "compositionally similar" formulas); *Televation Telecommunications Sys., Inc. v. Saindon,* 169 Ill.App.3d 8, 119 Ill.Dec. 500, 522 N.E.2d 1359, 1361 (1988) (permitting injunction forbidding manufacture or sale of any product similar to, or based on, or incorporating plaintiff's product that could add features to an existing in-house phone system).

We think defendants exaggerate the scope of the prohibition. They are on solid ground in challenging a prohibition that would ban the use or sale of readily available ingredients common to all pizza. But we do not think this prohibition reaches that far. We understand the words "substantially similar," used in the context of the challenged order, to extend only to any unique ingredients or qualities in 205 Corporation's recipes. So understood, we reject defendants' challenge.

■ The same is true with respect to defendants' protest concerning the injunction's duration. It is a permanent injunction in the sense that it will not expire at a given time. But it can extend only to the time required for independent development of the recipe. *See, e.g.,* 12A __. Milgrim, *Trade Secrets* § 7.08(2), at 7–319 (1992); Uniform Trade Secret Act § 2, *Commissioner's Comments,* 14 U.L.A. 450 (1990); __. Samuels & __. Johnson, *The Uniform Trade Secret Act; the State's Response,* 24 Creighton L.Rev. 49, 69 (1990). Anything more would be punitive, and beyond the proper function of injunctive relief.

Upon defendants' future application, the injunction should be dissolved, if defendants show an independent determination of the recipe's ingredients.

V. 205 Corporation's assignments on the cross-appeal challenge discretionary trial court determinations concerning which we find no abuse of discretion. These include the denial of punitive damages (discretionary under Iowa Code section 550.4(2)) and the denial of attorney's fees (discretionary under Iowa Code section 550.6).

Tax costs fifty percent to defendants and fifty percent to 205 Corporation.

**MODIFIED, AFFIRMED AND REMANDED ON APPEAL; AFFIRMED ON CROSS–APPEAL.**

LAVORATO and TERNUS, JJ., not participating.