ALLAN S. BIRD[1] *vs.* CAPITAL SITE MANAGEMENT COMPANY & others.[2]

Suffolk. March 7, 1996. - July 15, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Bond, Attachment, Trustee process, Judgment, Appeal, Contempt. *Rules of Civil Procedure. Contempt.*

Where the plaintiff in a civil action sought and obtained judicial approval to make attachment by trustee process, but did not as required by G. L. c. 246, § 1, file a bond in an amount established by the judge who approved the trustee process, there was no merit to the defendants' claim that the absence of a bond denied them due process of law. [174-175]

In a civil action, the judge did not err in excluding evidence proffered to show that the plaintiff would receive a windfall if the defendants were to pay the plaintiff for the defendants' wrongdoing, where there was no factual basis for the admission of such evidence. [175]

A Superior Court judge correctly held a civil defendant in contempt for his conduct in redeeming certificates of deposit that were the subject of the litigation and under an order of attachment, where the order was clear and precise and the defendant was fully aware of its terms; the defendant was not entitled to rely in defense on the obvious inconsistency between G. L. c. 246, §§ 40 and 41, and G. L. c. 235, § 16, of which he knew nothing at the time he disobeyed the clear and unequivocal order of the court, where the inconsistency did not affect the orders. [177-178]

A complaint for contempt brought against a person who was not a party to a civil action was remanded for a determination whether that person had counseled and aided a party to the action in disobeying an order of the court such that the person should also be held in contempt. [178-179]

CIVIL ACTION commenced in the Superior Court Department on March 24, 1989.

COMPLAINT for contempt filed August 3, 1992.

[1]As general partner of fifteen limited partnerships that own residential property largely situated in the northeastern United States.

[2]Asset Realty Management Corp. and John P. Panagako (whom we shall call the defendants); and BayBank Norfolk as defendant pursuant to trustee process and as petitioner for contempt findings against John and Janice Panagako.

The case was tried before *John C. Cratsley*, J., and the proceeding for contempt was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Neal Marshall Brown* for James Panagako & others.

*Robert B. Carpenter* (*Donnalyn B. Lynch Kahn* with him) for the plaintiff.

*Jerry B. Plumb, Jr.*, for BayBank Norfolk.

WILKINS, J. We have before us the defendants' appeal from a judgment entered against them in the Superior Court awarding the plaintiff more than $1,180,000, and attorneys' fees and costs, and cross appeals arising out of a finding of contempt entered against the defendant John P. Panagako, from which he appeals. The judge did not find his wife, Janice A. Panagako, in contempt, and the defendant trustee BayBank Norfolk (BayBank) has appealed from that ruling. We transferred the appeals here on our own motion.

The appeals raise different issues, which we shall treat separately. The underlying judgment was entered following a jury trial in which the jury, in answer to special questions, found that the defendant corporations had been in breach of their management contracts with the plaintiff; each of the three defendants had violated a fiduciary duty owed to the plaintiff; each defendant had intentionally or wrongfully converted the plaintiff's property and had intentionally made false representations of material fact to the plaintiff; and each defendant had received money that in fairness and good conscience should be paid to the plaintiff. The trial judge reserved the plaintiff's claim under G. L. c. 93A (1994 ed.) for decision by himself.

The management contracts were in a standard United States Department of Housing and Urban Development (HUD) format and concerned the management of apartment complexes owned by the fifteen limited partnerships of which the plaintiff is the general partner. Each of these facilities qualified for HUD rental subsidies. The jury verdict concerned (a) excessive management fees, (b) the wrongful use of identity-of-interest suppliers and contractors, and (c) the wrongful charging of salaries to various housing projects. One of the defendants' contentions is that the plaintiff was not harmed by their wrongdoing because HUD allowed rent

increases to cover the increased costs of operating the apartment facilities. One of the two issues presented on appeal from the underlying judgment concerns the judge's exclusion of evidence offered on this issue. The other issue arises from the defendants' claim that the court lacked jurisdiction of the case. We shall decide these two issues before considering the issues presented by the cross appeals from the judgment in the contempt proceeding.

## The Appeals from the Underlying Judgment

1. There is no merit in the defendants' argument that the court lacked jurisdiction of the case. After filing his complaint, the plaintiff sought and obtained judicial approval to make an attachment by trustee process, but he did not, as required by G. L. c. 246, § 1 (1994 ed.), file a bond in an amount established by the judge who approved the trustee process. Two years ago, in a most carefully considered opinion, the Appeals Court rejected a similar jurisdictional argument in *Big D Carpets, Inc.* v. *Welch Group, Inc.*, 37 Mass. App. Ct. 312, 313-315 (1994). The Appeals Court pointed out that the authority on which the defendant relied in that case had no continuing force in view of the changes that had been made by the adoption of the Massachusetts Rules of Civil Procedure and by amendments made to conform G. L. c. 246, § 1, to rule changes. *Id.* See also St. 1973, c. 1114, § 259, and St. 1986, c. 708, § 8. The defendants' claim that the absence of a bond denied them due process of law has no substance. The attachment was authorized by a judge.

Arguments made belatedly in the defendants' reply brief, seeking to distinguish the *Big D Carpets* case, also lack merit. The record in the *Big D Carpets* case shows that the case did not fall within any statutory exception to the bond requirement, nor did the Appeals Court's opinion even imply that the bond requirement was inapplicable in the circumstances. It is of no significance that the appeal in the *Big D Carpets* case was taken from a default judgment.

In short, as Justice Kaplan stated in *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74 (1975), in the modern view of the function of litigation procedure, "a distinction is taken between serious missteps and relatively innocuous ones." *Id.* at 79. The plaintiff's misstep was not a

serious one. The defendants, who could have moved for the filing of a bond but, as we shall later note, instead stipulated to the holding of the funds reached by trustee process, have not shown that they were in any respect prejudiced by the plaintiff's omission. See *id.* at 80; *Big D Carpets, supra* at 315-316.

2. The judge did not err in excluding evidence offered to show that HUD reimbursed the plaintiff for any losses he sustained due to the defendants' excessive fees. The defendants' assertion that their wrongdoing caused no harm to the plaintiff assumes that HUD would have no interest in, or claim against, the plaintiff for reimbursement arising from the defendants' misconduct. The defendants made no attempt to demonstrate that HUD could not, or would not, seek to recoup any overpayment. Moreover, as between the defendant wrongdoers and the innocent plaintiff, if either is to obtain a windfall, it should not be the defendants. Cf. *Jones* v. *Wayland*, 374 Mass. 249, 262 (1978).

### *The Appeals from the Contempt Judgment*

The contempt order was entered against the defendant Panagako (but not against his wife) because Panagako had violated an attachment order and a stipulation concerning trusteed funds held by BayBank. One month after this action was commenced, a judge allowed a motion for approval of an attachment by trustee process of Panagako's property held by BayBank. Among the funds that were thereupon attached were two certificates of deposit, each in the amount of $70,000, that were about to mature. The parties entered into a stipulation that the funds held by BayBank "shall be rolled over into new certificates of deposit, with such funds remaining subject to the attachment until further order of this Court." A judgment in the underlying action was entered in favor of the plaintiff on April 20, 1990, and the defendants filed a timely notice of appeal. Final judgment was entered in November, 1990.

We paraphrase the judge's findings in passing on BayBank's complaint for a finding of civil contempt against both Panagakos. On May 21, 1991, John Panagako went to the Wellesley branch of BayBank where he spoke with an assistant manager regarding the certificates of deposit. Panagako learned that there was no "hold" on the account, and he

withdrew the interest in the amount of $26,573.65. Panagako testified that he was "surprised" that the funds were released and that he believed that he was permitted to withdraw the interest because either there had been a bank "mistake" or the "lien" had lapsed.

On August 6, 1991, John and Janice Panagako went to the Wellesley branch of BayBank and spoke with the assistant manager about redeeming the two certificates of deposit. Presumably through a data-entry error on BayBank's part, the assistant manager was not informed that the funds were subject to trustee process. The Panagakos requested and received from BayBank three checks made payable to Janice Panagako, two in the amount of $50,000, and one in the amount of $41,067.92. Janice Panagako endorsed the checks and initially deposited $91,067.92 in her personal checking account and the remaining $50,000 in another account. Proceeds from the three checks were used to pay the family's living expenses.

At no time prior to August 6 did the Panagakos remind or warn BayBank that the certificate of deposit funds were the subject of litigation and attachment, nor did John Panagako speak with his attorney regarding the redemption of the certificate of deposit funds. Bird subsequently discovered that the Panagakos had redeemed the certificates. BayBank, acknowledging its error, paid Bird the principal and interest due on the certificates and then filed the complaint against John Panagako and Janice Panagako for civil contempt.

The judge ruled that both the order for trustee process attachment and the stipulation were clear and precise. He found that John Panagako had personal knowledge of both the attachment and the stipulation and that his conduct in redeeming the funds violated the clear command of the court. The judge held Panagako in contempt. He allowed BayBank's motion for attorney's fees and costs and ordered Panagako to repay BayBank the withdrawn funds (with interest) within thirty days of the exhaustion of all appeals from the underlying judgment and the contempt order, if Panagako proved to be unsuccessful in both appeals. Panagako appealed from the finding of contempt.

The judge viewed Janice Panagako's involvement differently. He stated that "[s]he was not a party to the underlying action which means that the terms of the attachment and the

Stipulation did not apply to her." He concluded that, although she had been involved in receiving and spending the certificate proceeds, Janice Panagako had not disobeyed a "clear and unequivocal command" of the court. The judge declined, therefore, to find her in contempt. BayBank has appealed from that ruling.

1. John Panagako bases his challenge to the finding of contempt on the ground that, when he received the funds from BayBank, they were no longer subject to attachment. He relies on an obvious inconsistency between G. L. c. 246, §§ 40 and 41 (1994 ed.), which provides that a plaintiff's demand for attached funds must be made "by force of the execution" within thirty days after the entry of a final judgment,[3] and G. L. c. 235, § 16 (1994 ed.), which was amended in 1975 (St. 1975, c. 377, § 117) to conform to new court rules, and provides that "[n]o execution shall issue upon a judgment until the exhaustion of all possible appellate review thereof, and the receipt by the clerk of the trial court of the appropriate rescript or order." If an appeal is taken from a final judgment, no execution may issue until the appeal is concluded. G. L. c. 235, § 16. Yet G. L. c. 246, § 40, on its face, says that no trusteed funds may be paid to the defendant unless a demand "by force of the execution" is made within thirty days after final judgment. Literally, therefore, a plaintiff may not make a demand unless he or she has obtained an execution and no execution may issue until an appeal is decided, but failure by a plaintiff to have an officer make a demand by means of service of a Superior Court execution, within thirty days of the final judgment from which the appeal is taken, will discharge the attachment if the funds

[3]Sections 40 and 41 of G. L. c. 246 read as follows:

"Section 40. If the goods, effects and credits in the hands of a person adjudged a trustee are not demanded of him by force of the execution within thirty days after final judgment, they shall be liable to another attachment, whether made before or after the judgment; or if there has been no such second attachment, they may be recovered by the defendant."

"Section 41. If no such second attachment of the goods, effects and credits has been made, and no action has been brought therefor by the defendant, and if they have not been paid or delivered to the defendant before they are demanded of the trustee by the officer, the trustee shall be liable to pay and deliver the same, when so demanded, although said thirty days have expired."

are paid to the defendant. The statutes read together make no sense.[4]

Panagako knew nothing of this statutory inconsistency when he withdrew the funds from BayBank. The orders of the court were not made unclear or equivocal by that statutory uncertainty. The stipulation provided that the funds should be held by BayBank until further order of the court. There was no further order. Panagako was rightly held in contempt because there was "a clear and undoubted disobedience of a clear and unequivocal command." *Peggy Lawton Kitchens, Inc.* v. *Hogan,* 403 Mass. 732, 734 (1989), quoting *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.,* 361 Mass. 35, 36 (1972).

We need not resolve the question whether, in the absence of the stipulation, the inconsistent statutes would excuse Panagako's conduct and negate a contempt finding. We add that the judge's resolution of the problem makes sense, at least where an appeal has been taken, that G. L. c. 246, § 40, "has been implicitly amended so that the thirty (30) day period commences to run not after the entry of final judgment, but after the date of issuance of an execution" after conclusion of the appeal or, we add, some other postrescript date. Obviously, a curative amendment to G. L. c. 246, § 40, is in order.

2. The trial judge's ruling that Janice Panagako was not in contempt because she was not a party to the underlying action is not dispositive of the question whether she was in contempt of court.

A person who was not a party to an action in which an order was entered may in certain circumstances be found to be in contempt of that order. "Any person . . . though not a party to the cause, who counsels or aids a party in disobeying a decree, is himself punishable." *Commonwealth* v. *Hudson,* 315 Mass. 335, 347 (1943). The principle is not new. *Alemite Mfg. Corp.* v. *Staff,* 42 F.2d 832, 832 (2d Cir. 1930) ("a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for

---

[4]The problem has been noted. See Shapiro, Perlin & Connors, Massachusetts Collection Law § 5:90, at 180 n.55 (2d ed. 1992) ("It appears that G. L. c. 246, § 40, should have been amended to accommodate the new procedural rules under which entry of judgment occurs *before* appeal can be claimed" [emphasis in original]).

contempt"). See *Roe* v. *Operation Rescue,* 54 F.3d 133, 140 (3d Cir. 1995) (nonparty who knowingly abets another in violating valid court order may be subject to contempt); *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* 639 F.2d 29, 35 (1st Cir. 1980) ("a nonparty, if not legally identified with a party, can be found to be in contempt only if in active concert or participation with a party in postinjunction activity"). The concept is reflected in the Massachusetts Rules of Civil Procedure. See Mass. R. Civ. P. 71, 365 Mass. 837 (1974) ("when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party"); Reporters' Notes to Rule 71, Mass. Ann. Laws, Rules of Civil Procedure at 681 (1982) (indicating that the clause quoted above would apply if a "person knowingly aids or abets the disobeying of the injunction"); Mass. R. Civ. P. 65 (d), 365 Mass. 832 (1974) (injunction or restraining order binding on parties, their agents, and "those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise").

The judge found that Janice Panagako was involved in receiving and spending the proceeds of the certificates, but made no finding whether she was aware of the attachment or the stipulation. We shall remand the contempt portion of the case solely for further findings and rulings on the question of the contempt of Janice Panagako.

## Conclusion

The judgment in the underlying action awarding the plaintiff damages, attorneys' fees, and costs is affirmed. The order of contempt against John Panagako is affirmed. The denial of BayBank's motion for a finding of contempt against Janice Panagako is vacated, and the question of her contempt of court is remanded for further consideration in light of this opinion.

*So ordered.*