Hillman, Timothy S., J.
The plaintiff, Mohamad A. Mohamad, brings these complaints for civil contempt against two entities, Emanuel E. Landsman (“Landsman”) and Gulf Oil Limited Partnership (“Gulf Oil”). Landsman and Gulf Oil were not parties to the underlying action between Mohamad and the defendant, Sarkis A. Kavlakian (“Kavlakian”). Mohamad nevertheless asserts that Landsman and Gulf Oil should be held in civil contempt for violating an order issued by Justice Billings of the Worcester Superior Court. Landsman and Gulf Oil counter that the order by its express terms applies only to Driveway Auto, Inc. (“Driveway Auto”), an unrelated entiiy. Landsman asserts that Mohamad has failed to meet the standards for service of process under Mass.R.Civ.P. 4. In addition, Landsman requests dismissal of the complaint on the merits. Similarly, Gulf Oil moves to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Gulf Oil also requests that this Court impose sanctions on Mohamad and his attorney, Stephen Gordon, pursuant to G.L.c. 231, §6F, and Mass.R.Civ.P. 11. For the reasons set forth below, Mohamad’s complaints for civil contempt against Landsman and Gulf Oil are dismissed. In addition, Gulf Oil’s motion for sanctions is granted.

BACKGROUND

This case arises out of Mohamad’s efforts to satisfy a substantial judgment that he obtained against Kavlakian for breach of contract and -violations of G.L.c. 93A. In an attempt to satisfy the judgment, Mohamad filed an ex parte motion to reach and apply the proceeds of a mortgage that Kavlakian held as a matter of record. The mortgage property, located at 671 Main Street in Winchester (“the premises”), was encumbered by multiple parties. The parties to the present contempt action were each related to a business venture that operated a gas station on the premises. A history of the business relationship among the parties is necessary to determine whether the terms of the order apply to Landsman and Gulf Oil.[3]
In 1994, Landsman extended purchase money financing in the amount of $270,000.00, at an annual interest rate of 8.75%, to Michael Forrest (“Forrest”), the principal of Driveway Auto. Forrest signed a promissory note in favor of Landsman (“the note”). The terms of the note stated that Forrest would make monthly installment payments to Landsman in the amount of $2,124.09. The principal amount was due in full on September 14, 1996. The note was secured by a mortgage on the premises, where Driveway Auto operated a gas station. Forrest encountered financial difficulty, and did not pay the principal in full by September of 1996. Landsman granted Forrest an extension of the note multiple times. As of early 2002, Driveway ceased making payments on the note.
Kavlakian approached Landsman and proposed arrangement that would enable Landsman to receive payments on the note. The basic agreement was that Kavlakian would execute a promissory note in the amount of the mortgage principal in favor of Landsman, and in exchange Kavlakian would receive an assignment of the mortgage from Driveway Auto. Specifically, Kavlakian executed the note in the amount of $295,000.00 at an annual interest rate of 7% (“the Kavlakian note”). Under the terms of the Kavlakian note, Kavlakian was to pay Landsman monthly installment payments in the amount of $1,961.75 for three years. The entire principal was due on May 1, 2006. The note stated that the default would occur in the event of “service upon the holder hereof of a writ, or other process seeking security for a judgment in litigation . . .” (Landsman Memo, at Ex. D.) Landsman and Kavlakian recorded the Kavlakian note and the mortgage assignment with the Middlesex Registry of Deeds.
The Kavlakian note and assignment were subject to an undisclosed, unrecorded escrow agreement. One provision of the escrow agreement, designated the “assignment back,” would effect an assignment of the mortgage from Kavlakian back to Landsman. According to the agreement’s terms, the escrow agent was to hold the “assignment back” until the occurrence of either of two conditions subsequent. First, in the event that Kavlakian satisfied his obligations under the Kavlakian note, the escrow agent was required to destroy the escrow agreement. Second, in the event that Kavlakian defaulted on the Kavlakian note, the escrow agent was directed to immediately record the escrow agreement document, including the assignment back, with the appropriate registry of deeds.
During the spring of2004, Forrest served Kavlakian with a notice to quit. At this time, even though he was not the owner of the premises and he had defaulted on the Kavlakian note, Kavlakian was negotiating with Mohamad to lease the premises to him. Mohamad gave Kavlakian a $40,000.00 deposit that was to be refunded in the event that Mohamad was unable to obtain a sign permit for the premises. Mohamad was unable to obtain the permit within the agreed-upon time frame. He then requested that Kavlakian either refund his deposit or grant him an extension of time in which to obtain the permit. The defendant refused to return Mohamad’s deposit and did not grant him an extension.
In July of 2003, Mohamad filed the underlying action against Kavlakian alleging breach of contract *529 and violations of G.L.c. 93A. On September IS, 2003, Mohamad obtained a default judgment against Kavlakian. Thereafter, Kavlakian moved to remove the default, which motion was denied after a hearing on November 17,2003. On March 16, 2004, Judge Agnes issued a Memorandum of Decision and Order on Mohamad’s motion for assessment of damages. The court awarded Mohamad $44,500.00 in principal damages for breach of contract. Finding violations of G.L.c. 93A, the court doubled the damage award and also awarded Mohamad attorneys fees.
During his search to uncover Kavlakian’s assets, Mohamad discovered the Driveway Auto mortgage held by Kavlakian. At this time, Mohamad did not have notice of the escrow agreement. Mohamad then filed an ex parte motion to reach and apply the proceeds of the Driveway Auto mortgage. On June 1, 2004, Judge Billings issued an order directing Driveway Auto to make all payments due on the mortgage to the Worcester Superior Court. The order allowing Mohamad’s ex parte motion states the following:
Driveway Auto, Inc., is to make all payments due on the mortgage dated 9/14/93 and the note secured by same to the Clerk of the Worcester Superior Court pending further Order of this Court. (Billings, J.)
Upon learning of Kavlakian’s legal difficulties and his indebtedness to various creditors, Landsman directed the escrow agent, who was also his attorney, to record the assignment back. The assignment back was recorded on June 29, 2004.
Driveway Auto was a franchisee of Gulf Oil pursuant to a gasoline supply agreement. The gasoline Gulf Oil supplied to Driveway Auto pursuant to the agreement was secured by two mortgages on the premises; one dated April 8, 1999, in the amount of $47,464.00, and the other dated January 18, 2001, in the amount of $62,953.00. These mortgages were junior to the first mortgage held by Kavlakian. In September of 2004, Gulf Oil filed a complaint against Driveway Auto, Inc., and Forrest to collect the sum due Gulf Oil under the supply agreement. The total amount then outstanding was $122,181.16.
During November of2004, Driveway Auto contacted its creditors, including the Internal Revenue Service and the Massachusetts Department of Revenue, to negotiate its debts in anticipation of selling the premises. The premises was eventually sold on November 26, 2004. Gulf Oil reached an agreement whereby Gulf Oil received no less than $50,000.00 from the sale proceeds in full satisfaction of Driveway Auto’s indebtedness to Gulf Oil. Landsman received the negotiated sum of $235,000.00 from the sale proceeds. Landsman accepted this amount in full satisfaction of the note, which was worth significantly more.
Mohamad maintains that the order issued by Judge Billings constitutes an equitable lien on the premises. Consequently, Mohamad argues, the proceeds of the foreclosure sale should not have been distributed without prior court authorization. Mohamad therefore filed a complaint for civil contempt against Landsman, Gulf Oil, and Forrest on January 6, 2005.

DISCUSSION

The Court notes that the docket entries for the Kavlakian matter, Civil Action No. 03-1416, do not contain a notation that service was returned on the contempt complaints. The procedural posture of this case is therefore ambiguous because the plaintiff has failed to properly serve Landsman and Gulf Oil with the complaints for civil contempt. See Mass.R.Civ.P. 65.3(e). Landsman asserts the defense of insufficiency of process and also argues that the complaint for civil contempt levied against him should be dismissed.[4] Gulf Oil does not raise the issue of insufficiency of process, but does move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6). This Court will treat Landsman and Gulf Oil’s pleadings as motions to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) because the facts alleged in the complaint are insufficient, as a matter of law, to support a charge of civil contempt.
For purposes of a motion to dismiss a complaint, the allegations in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should be granted only if “it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Gen. Motors Acceptance Corp., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 42, 45-46 (1957)

I. Contempt

To constitute civil contempt, there must be a “clear and undoubted disobedience of a clear and unequivocal command.” Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 700 (1995), quoting United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 36 (1972). The order must be sufficiently clear to provide the party with unequivocal notice of the conduct that is required or prohibited. Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 565 (1997). See Warren Gardens, 420 Mass. at 701. Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt. The Judge Rotenberg Educ. Ctr. v. Comm’r of the Dept, of Mental Retardation, 424 Mass. 430, 443 (1997); Bldg. Inspector of Peabody v. Northeast Nursery, Inc., 418 Mass. 401, 406 (1994).
When considering a contempt complaint, the court focuses primarily on the language of the order. Peggy Lawton Kitchens, Inc. v. Hogan, 403 Mass. 732, 734-35 (1989). The court will not read additional terms into an order, and will not hold the defendant in contempt if, in order to do so, the scope of the underlying order would be expanded beyond its plain meaning. *530 Demoulas, 424 Mass, at 566. See The Judge Rotenburg Educ. Ctr., 424 Mass. at 449; Peggy Lawton Kitchens, 403 Mass. at 734-35.
Mohamad received a substantial judgment against Kavlakian and 671 Main Street Trust for breach of contract and violations of G.L.c. 93A; therefore, he is entitled to reach the assets of Kavlakian and the Trust to satisfy his judgment. As a matter of record, the Driveway Auto mortgage was a source of funds to Kavlakian. Mohamad thus sought and obtained an order requiring Driveway Auto to make its payments on the mortgage to the Worcester Superior Court instead of to Kavlakian. Mohamad contends that this order constitutes an equitable lien on the premises that is binding on all entities related to the premises. According to this logic, an equitable lien functions as an attachment on the property and Landsman and Gulf Oil violated the order when they received funds from the foreclosure sale.
In United States v. Friedman, 143 F.3d 18 (1st Cir. 1998), the court, citing Black’s Law Dictionary, defines an equitable lien as follows; “A right, not existing at law, to have specific property applied in whole or in part to payment of a particular debt or class of debts. An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation or is implied and declared by a court of equity out of general considerations of right and justice as applied to relations of the parties and circumstances of their dealings.” United States v. Friedman, 143 F.3d at 23, quoting Black’s Law Dictionary at 539 (6th ed. 1990). Mohamad cites Friedman for the proposition that “the equitable lien protects those who expect to be paid from the proceeds of a sale, such as attorneys and brokers, and who would not necessarily have a secured interest in the property.” (Plaintiff Memo, at 6).[5] The plaintiff omits several critical facts that render Friedman wholly inapplicable to the case at bar.
The defendant in Friedman was convicted of bank fraud and ordered to pay the Federal Deposit Insurance Corporation substantial restitution. Members of the Friedman family owned a valuable condominium through a real estate trust. The family sold the condominium soon after the defendant’s conviction. Upon learning of the sale, the government filed an ex parte motion requesting seizure of the sale proceeds. The court concluded that the defendant in fact controlled the asset even though his wife was the record owner and ordered the United States Marshals to seize the sale proceeds. Prior to the sale, a Friedman family member persuaded a creditor of the family business not to attach the property through formal legal proceedings because she feared that such an attachment would have a chilling effect on the impending sale. The creditor agreed to forbear from filing a formal attachment, but only after receiving the family member’s written guarantee that it would be paid from the proceeds of the sale. The court concluded that the creditor’s interest in the property was sufficiently definite to rise to the level of an equitable lien under Massachusetts law. United States v. Friedman, 143 F.3d at 23.
The plaintiffs attempt to analogize Friedman to the facts and circumstances of the case at bar is strained at best. An equitable lien embraces a “right, not existing at law, to have specific property applied in whole or in part to payment of a particular debt or class of debts.” United States v. Friedman, 143 F.3d at 23, quoting Black’s Law Dictionary at 539 (6th ed. 1990) (emphasis added). Kavlakian did not have any interest in the mortgage property, but rather was entitled to the proceeds of a mortgage on the premises. The property itself could not be attached to satisfy Kavlakian’s judgment debt to Mohamad because Kavlakian had no interest in the property. Moreover, Friedman illustrates that an equitable lien arises out of an agreement or contractual relationship between the parties, whether express or implied by the court. The court will impose an equitable lien upon the property where the relationship of the parties suggests that, as a matter of equity, a party has an interest in the property sufficiently definite to rise to the level of a lien. There was no agreement before the court that would suggest that the parties involved, Mohamad and Kavlakian, had an agreement or business relationship that would compel the court to attach the premises. Here, the order did not grant Mohamad an interest in the property. It merely granted Mohamad the right to receive payments that would be have been remitted to Kavlakian. In addition, the Friedman court noted that the language of the order itself excluded all secured claims and other liens, thereby protecting the rights of creditors who may have requested relief subsequent to the ex parte motion. United States v. Friedman, 143 F.3d at 22, 24. The order in this case does not contain language relating to other creditors or claimants. It is simple and specific, directing Driveway Auto to pay sums it owed to Kavlakian into the court. The order does not grant Mohamad an interest in the property sufficiently definite to rise to the level of a lien.
To determine whether Landsman or Gulf Oil disobeyed a clear and unequivocal command of the court, I must adhere to the plain language of the order. Peggy Lawton Kitchens, 403 Mass, at 734-35. The language of the order does not contemplate an equitable lien or an attachment of the premises, but rather a seizure of the proceeds of a mortgage held by Kavlakian. To hold otherwise would impermissibly expand the order beyond its plain meaning. Id.
Mohamad further alleges that Landsman’s recording of the assignment back violated Judge Billings’s order. It is a long-settled principle that a mortgage cannot be “attached in an action at law, as real estate, and the plaintiff can reach and apply . . . only such interest as the defendant . . . had in the note and *531 mortgage.” Weinberg v. Brother, 263 Mass. 61, 62 (1928). Here, Mohamad could only attach Kavlakian’s interest in the mortgage because Kavlakian was the only party liable to Mohamad as a judgment debtor. The underlying principle is that “an attaching creditor cannot stand on better footing than his debtor.” O’Gaspian v. Danielson, 934 Mass. 27, 32 (1933). Thus, Mohamad can attach Kavlakian’s interest in the mortgage proceeds, but only subject to any conditions upon Kavlakian’s interest. In Weinberg v. Brother, 263 Mass. 61 (1933), the owner of the property took a mortgage in the name of the defendant. The defendant then assigned the mortgage to the owner; the assignment was not recorded. The transaction was structured to place the property beyond the reach of the owner’s creditors. The Court held that the mortgage could not be reached by the defendant’s creditors, despite the lack of recording the assignment, because the defendant retained no interest in the mortgage or the note. It is significant that in the case at bar, unlike Weinberg, the assignment back was not drafted in an attempt to defraud Landsman’s creditors, but as security for Landsman’s assignment of his investment to Kavlakian. As in Weinberg and O’Gaspian, the plaintiffs analogy to the recording statutes is unavailing because the plaintiff did not attempt to purchase the premises or extend credit to the defendant in reliance upon the record. Mohamad has no greater rights in the note and mortgage than his debtor, Kavlakian. Kavlakian cannot deprive Landsman of his interest in the mortgage and note by defrauding Mohamad, a third party unrelated to the underlying mortgage transaction. See O’Gaspian, 284 Mass, at 36.
Viewing his business conduct in light of the language of the order, I find that the order does not apply to Landsman and he is therefore not liable for contempt.
Mohamad attempts to establish Gulf Oil’s liability for civil contempt through the equitable lien theory detailed above. In his “Ex Parte Motion to Reach and Apply Proceeds of a Mortgage Pursuant to This Court’s Equitable Powers and M.R.Civ.P. 69,” the plaintiff specifically requested that the court “(ijssue an order to the mortgagor/Driveway Auto, Inc., its successors, assigns, or heirs or anyone claiming thereunder that all monies due for whatever reason to the 671 Main Street Realty Trust and/or Sarkis Kavlakian, under a note and/or mortgage or otherwise or to Sarkis Kavlakian, be forthwith paid to the Worcester County Superior Court Clerk’s Office where it will be held pending further order of this Court ...” The plaintiff drafted the motion and properly requested that the court order funds due to Kavlakian paid to the Superior Court and held in escrow. The motion was directed only at funds due to Kavlakian, the defendant. The motion did not request that funds due to Gulf Oil under a separate and unrelated mortgage be paid to the Superior Court because Mohamad did not obtain a judgment against Gulf Oil and Gulf Oil was therefore not liable to Mohamad. Again, the court will not expand the scope of an order beyond its plain meaning. See Demoulas, 424 Mass, at 566. The language of the order addresses but one entity, Driveway Auto, Inc., to remit sums due on but one mortgage, the mortgage dated September 14, 1993. Gulf Oil is not implicated by the order under any reasonable reading of the unambiguous language contained therein.
The burden of proof in a contempt action is on the complainant to prove its case by a preponderance of the evidence. Judge Rotenburg Educ. Ctr., 424 Mass, at 443. Mohamad’s burden is heightened because Landsman and Gulf Oil are nonparties to the underlying action. A person who was not a party to an action in which an order was entered may in certain circumstances be found to be in contempt of that order. Generally, “[a]ny person . . . though not a party to the cause, who counsels or aids a party in disobeying a decree, is himself punishable.” Bird v. Capital Site Mgt. Co., 423 Mass. 172, 178-79 (1996), quoting Commonwealth v. Hudson, 315 Mass. 335, 347 (1943). Mohamed cannot sustain his burden in this case because the facts alleged do not indicate any business dealings or relationship between Kavlakian and the contempt defendants, Landsman and Gulf Oil, that suggest that the contempt defendants acted in concert with a party to violate the order.

II. Sanctions

Gulf Oil petitions this Court for sanctions pursuant to G.L.c. 231, §6F, and Mass.R.Civ.P. 11 against Mohamad and Gordon for filing a complaint for civil contempt “asserting wholly insubstantial, frivolous claims, not in good faith, and for doing so through pleadings which Gordon and Mohamad knew there were no good grounds to support.” (Gulf Oil Motion at 1.) Specifically, Gulf Oil requests attorneys fees and costs expended in defending the contempt action.
Massachusetts R.Civ.P. 11 places an affirmative obligation on an attorney signatory to a pleading to be satisfied, in good faith, that “good grounds” existed for the claims therein asserted. The rule does not specify the particular sanction to be levied against an offending attorney, but precedent holds that a judge is authorized to impose attorneys fees and costs where an attorney has failed to show a subjective good faith belief that the pleading was supported by both fact and law. Van Christo Advertising, Inc. v. M/A-COM/LCS, 426 Mass. 410, 416 (1998). Although the standard is somewhat less demanding than the objective standard in the Federal Rule 11., Mass.R.Civ.P. 11 “does not excuse an attorney’s ‘wilful ignorance’ of facts and law which would have been known had the attorney simply not consciously disregarded them." Van Christo, 426 Mass, at 416-17.
Gordon drafted the ex parte motion that gave rise to the order under consideration here. In that order, *532 Gordon specifically requested that the court collect payments due to the defendant Kavlakian from Driveway Auto. Gordon did not address Gulf Oil’s mortgages in the ex parte motion. Gordon did not join Gulf Oil as a party to the action at any time. The record with respect to the premises clearly indicates that Gulf Oil held two mortgages dated April 8, 1999, and January 18, 2001, not September 19, 1993. The court notes that Gulf Oil’s counsel, in correspondence dated January 3, 2005, advised Gordon that she questioned the applicability of the order to Gulf Oil because (1) Gulf was not named in the order, and (2) Gulf did not hold the mortgage specifically referenced in the order. Counsel advised Gordon of the dates of the mortgages held by Gulf Oil. Counsel then requested a clarification of Mohamad’s position with respect to the order’s application to Gulf Oil; such clarification was not forthcoming. Gordon has not provided this Court with any affidavits or other supporting documents to explain the process by which he determined to commence this litigation against Gulf Oil. Contrast Van Christo, 426 Mass, at 418 (attorney submitted an affidavit containing a detailed explanation of the steps she took prior to filing complaint, including conducting interviews and researching applicable law). Nor has Gordon provided this Court with any explanation of the basis for his protracted correspondence with attorneys for Gulf Oil and his failure to properly serve the contempt defendants. Considering the facts and circumstances of this litigation, I find that Gordon was “willfully ignorant” of facts and law relevant to his client’s contempt action against Gulf Oil. See Van Christo, 426 Mass, at 416-17.
Gulf Oil also asserts that the contempt action exposes Mohamad and Gordon to liability under G.L.c. 231, §6F. Under G.L.c. 231, §6F, a party may recover his attorneys fees and other costs upon a showing that the claims advanced were “wholly insubstantial, frivolous, and not advanced in good faith.” G.L.c. 231, §6F. See Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 780-81 (1986). “Good faith implies an absence of malice, an absence of design to defraud or to seek an unconscionable advantage.” Hahn v. Planning Bd. of Stoughton, 403 Mass. 332,337 (1988). In determining the presence or absence of good faith for the purpose of awarding attorneys fees under G.L.c. 231, §6F, the standard is neither wholly subjective nor wholly objective. Massachusetts Adventura Travel, Inc. v. Mason, 27 Mass.App.Ct. 293, 297 (1989). The court must consider whether Mohamad’s allegation that Gulf Oil was bound by the court order was warranted by the evidence. See Id., at 298. Where the claim advanced is essentially unsupported by the evidence, a party’s subjective belief in the merits of his claim will not shield him from an attorneys fee award under §6F. Id., 27 Mass, at 299. As discussed above, Gulf Oil’s position as a creditor of Driveway Auto was wholly separate and distinct from any transaction between Kavlakian and Landsman. Gulf Oil’s mortgages were clearly unrelated to the September 14, 1993. The order could not possibly be construed to issue a “clear and unequivocal command” to Gulf Oil. Even assuming that the order could apply to Gulf Oil through an innovative interpretation of the terms, such an interpretation could not be employed to Gulf Oil in contempt because contempt cannot be found where an order is ambiguous. See Warren Gardens, 420 Mass, at 701. The evidence simply does not support a claim that the order placed Gulf Oil on unequivocal notice of the prohibited conduct, and that Gulf Oil deliberately disobeyed the order’s command.
This court also notes Gordon’s assertion to counsel for Gulf Oil, in correspondence dated January 7, 2005, that he is “not obligated to educate [Attorney Schuler] on [her] client’s wrongdoing.” Although a complaint need not formulate the precise issues for trial, under Mass.R.Civ.P. 8, a “pleading which sets forth a claim for relief. . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2). a demand for judgment for the relief to which he deems himself entitled.” Mass.R.Civ.P. 8. Under this basic rule of pleading, the complaint must raise the relevant issues to put the defendant on notice of the plaintiffs theory of the case. Pederson v. Time, 404 Mass. 14, 17 (1989). Given that the contempt defendants were not properly served in this case, Gordon was required to apprise Gulf Oil of the basis for his client’s claim with sufficient specificity to put it on notice of Mohamad’s theory of the case.
I conclude that sanctions are appropriate in this case because the contempt claim asserted against Gulf Oil was “wholly insubstantial, frivolous, and not advanced in good faith.” Moreover, I find that the evidence did not substantiate a colorable claim for contempt, and Gordon therefore signed pleadings for which he knew there were no good grounds to support.
This court therefore awards Gulf Oil attorneys fees and costs incurred in defending this action.
Gulf Oil is directed to submit an accounting of fees and costs to this Court within sixty days. Fees and costs will be assessed after a review of Gulf Oil’s submission.

ORDER

For the foregoing reasons, the complaints for civil contempt brought against Emmanuel E. Landsman and Gulf Oil Limited Partnership are hereby DISMISSED. In addition, sanctions are imposed against Stephen Gordon, counsel for the plaintiff, pursuant to Mass.R.Civ.P. 11 and G.L.c. 231, §6F. The sanction amount will be determined upon review of an accounting submitted by Gulf Oil Limited Partnership within sixty days of receipt of this order.

When considering a motion to dismiss, the court accepts all facts asserted in the complaint as true. The relevant facts are not in dispute, and the plaintiff acknowledges that “(tlhere *533 is no dispute about the facts in this case.” (Plaintiff Memo, at 1.) While the facts in the complaint are supplemented here by facts set forth in the defendants’ answers, this is solely to provide background and frame the issues. The additional facts are not dispositive of this motion to dismiss.

Landsman asserts in his Opposition that the complaint should be dismissed but does not specifically invoke Mass.R.Civ.P. 12(b)(6).

This sentence is in fact a partial quotation from Friedman at page 24. In context, the court of appeals was not generally discussing the nature of equitable liens, but rather the district court’s interpretation of the specific language of the order at issue.