Eldim, Inc. *vs.* Stephen J. Mullen & another.[1]

No. 96-P-1897.

Middlesex. October 7, 1998. - June 15, 1999.

Present: Brown, Smith, & Beck, JJ.

*Contract,* Agreement not to compete. *Injunction. Contempt. Damages,* Contempt, Attorney's fees, Loss of profits. *Practice, Civil,* Contempt, Appeal, Attorney's fees.

In an action for contempt, there was no merit to the defendants' claims that the injunctive order in question was not clear and unequivocal and that the defendants did not engage in clear and undoubted disobedience. [128-129]

In an action for contempt of an injunctive order not to compete, the judge properly awarded the plaintiff lost profits [129-130], reimbursement of noncompetition fees [130], and attorney's fees [130]; however, the matter of attorney's fees was remanded for further consideration of the amount to be awarded [130-131].

Appellate attorney's fees were appropriately awardable on a successful appeal of a successfully prosecuted action for civil contempt. [131]

Civil action commenced in the Superior Court Department on March 21, 1995.

A complaint for civil contempt, filed on March 8, 1996, was heard by *Raymond J. Brassard,* J.

*Heidi E. Harvey (Blair L. Perry* with her) for the defendants.
*Douglas J. Kline* for the plaintiff.

Beck, J. The defendants appeal from a Superior Court judgment awarding the plaintiff damages and attorney's fees for contempt of an injunction requiring the defendants to comply with the terms of a noncompetition agreement between the plaintiff and defendants. The defendants claim that the terms of the injunction were not clear; their activities did not violate the injunction; the plaintiff failed to prove lost profits; there was no basis for return of the noncompetition payments; and the

---

[1]SJM Engineering, Inc.

evidence regarding the plaintiff's legal fees was insufficient. We affirm the judgment, except for the matter of the amount of attorney's fees, which we remand to the Superior Court.

1. *Factual background.* The following factual background is not in dispute. The plaintiff, Eldim, Inc. (Eldim), designs, develops, and manufactures metal foil honeycomb products for a variety of industries. These products are light but very strong. The products are custom made and contain proprietary technology. Starting on July 1, 1990, if not before, the defendants, Stephen J. Mullen and his company, SJM Engineering, Inc., of which Stephen Mullen is the only employee (collectively, Mullen), served as "[e]ngineering [m]anager for [Eldim's] activities in the areas of design, production and manufacturing of honeycomb products" pursuant to a consulting agreement. At one time, Stephen Mullen also held the title of acting general manager of Eldim. During the time Stephen Mullen worked at Eldim, he was the primary contact person between Eldim and its largest client (the client), a multinational corporation. He developed a program for collaboration between Eldim and the client based on a concurrent engineering system, and he also wrote reports relating to that program. The client accounted for fifty to eighty per cent of Eldim's business.

The written consulting agreement (agreement) between Eldim and Mullen contained a "[n]oncompetition [a]greement" that "survive[d] termination of [the consulting] [a]greement . . . and end[ed] 18 months after such termination." The noncompetition agreement provided that Mullen would not provide services to Eldim's competitors or "otherwise compete with [Eldim] in the areas of design, production and manufacturing of honeycomb products during the term of [the] [a]greement without the written consent of [Eldim]." The parties agreed to arbitrate any dispute arising under the agreement. Upon Mullen's departure from the company, in July, 1994, Eldim, in order to invoke the noncompetition agreement, continued to pay Mullen's monthly consulting fees as provided for in the agreement.

2. *The court orders.* In February, 1995, seven months after leaving Eldim, Mullen made a presentation and submitted a written proposal and samples for certain updated honeycomb products to the client. The next month, Eldim filed a complaint in Superior Court seeking injunctive relief to preserve the status quo pending arbitration, as provided for in the agreement. On

Eldim, Inc. *v.* Mullen.

April 6, 1995, a Superior Court judge issued a "temporary injunction" that "enjoin[ed] . . . the . . . [defendants] . . . to desist and refrain from engaging in activities directly or indirectly in competition with Eldim in the areas of the design, production and manufacturing of 'honeycomb' products through and until January 13, 1996."

On September 6, 1995, the arbitrator issued her award, which, among other things, enjoined the defendants "from engaging in activities directly or indirectly in competition with Eldim, Inc. in the design, production and manufacturing of any product composed of . . . 'honeycomb' material or having 'honeycomb' components for [the client and another customer,] through and including January 13, 1996." The arbitrator's award also provided that Eldim could stop making payments to Mullen under the noncompetition clause of the agreement, "except that any past due payments . . . must be made for any period of non-competition while the Superior Court's temporary injunction has been in place." The arbitrator's award purported to vacate the temporary injunction. On Mullen's motion, the Superior Court confirmed the arbitrator's award as a final judgment on September 20, 1995.

Six months later, on March 8, 1996, Eldim filed a complaint for civil contempt in Superior Court, alleging that Mullen had violated the final judgment entered by the court. After a jury-waived trial, a judge of the Superior Court found Mullen in contempt.

3. *Findings of fact and conclusions of law.* The trial judge found that, in the fall of 1995, Mullen sent the client engineering graphics and specifications regarding a new honeycomb concept that Mullen initially presented to the client in February, 1995, and that Mullen provided engineering services and critical information to the client relating to the development of the new concept. Mullen also sent the client "a testable sector of the . . . design . . . between October 1995 and December 1995." The judge further found that "[o]n December 15, 1995 [Mullen] approved the contents of the RFQ [request for quotations] to be sent by the [client] to suppliers. . . . The RFQ also incorporated design specifications which [Mullen] provided during the injunction period." On December 18, 1995, Mullen sent the client a facsimile providing suggestions and specifications concerning a related project. Finally, Mullen sent quotations in response to the RFQ to the client on January 3 and 4, 1996, but

explicitly indicated that Mullen could not accept purchase orders until after January 13, 1996. On January 13 or 14, 1996, the client awarded the RFQ to Mullen.

The trial judge concluded that Mullen's conduct "constituted a clear and unequivocal violation of [the] [c]ourt's injunction." The judge limited relief to remedial damages, concluding that "enjoin[ing] the defendants from performing the contract with the [client] would be unfair to both the [client] and the marketplace." He awarded Eldim lost profits of $158,800, legal fees of $80,000, and reimbursement of $45,440.80 for payments made under the noncompetition agreement, "because Mullen competed."

4. *Contempt.* "'To find a violation of an injunction sufficient to justify an order of contempt, there must be a 'clear and unequivocal command and an equally clear and undoubted disobedience.'" *Demoulas* v. *Demoulas Super Markets, Inc.*, 424 Mass. 501, 565 (1997), quoting from *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). On appeal, Mullen argues that the command was not clear and unequivocal and that Mullen did not engage in clear and undoubted disobedience. There is no merit to either of these arguments. The terms of the noncompetition orders in the injunction were taken essentially verbatim from the consulting agreement that the parties agreed upon at the outset of their business relationship, at least four years before Mullen's departure from Eldim. At the very least, Mullen was "on notice that certain actions could constitute the basis for contempt." *Demoulas* v. *Demoulas Super Markets, Inc.*, supra at 567. Indeed, it was Mullen who filed the motion to convert the arbitrator's award to a judgment. "Where an injunction is in effect, the party bound by the order is responsible for ascertaining whether any proposed actions are among the proscribed activities. '[I]t is not the plaintiff's obligation to police the decree but the defendant's obligation to make certain he does not violate it. Thus if the defendant saw the decree as ambiguous on the point in question, he could have sought clarification from the court before he engaged in the questionable conduct.'" *Id.* at 569, quoting from *Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould*, 359 Mass. 269, 275 (1971). Given Eldim's persistent efforts to enforce the underlying agreement, and Mullen's obvious interest in contacting the client, this obligation is especially appropriate here.

As to Mullen's conduct, there is more than adequate support

in the record for the judge's findings of fact. In particular, the judge's finding that Mullen sent a quotation to the client for the client's project before January 14, 1996, is not clearly erroneous, see *Demoulas* v. *Demoulas Super Markets, Inc.*, 424 Mass. at 569, especially since it was based on his finding that Mullen's testimony on this subject, as well as others, was not credible. See *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 797 (1986) (credibility of witnesses for judge to determine). Moreover, the judge allowed Mullen to submit additional evidence on this point at a subsequent hearing on Mullen's motion to amend the findings or, in the alternative, for a new trial. On receiving the evidence, the judge reiterated that his finding was "based and rooted largely in credibility" and, accordingly, he denied the motion. Given his findings of fact, the judge's conclusion that the conduct constituted contempt was not an abuse of discretion. *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 443 (1997).

5. *Damages.* "The purpose of civil contempt proceedings is remedial," and the formulation of the remedy is within the judge's discretion. *Demoulas* v. *Demoulas Super Markets, Inc.*, 424 Mass. at 571. Here the judge awarded lost profits, reimbursement of noncompetition fees, and attorney's fees. Mullen objects to all three awards.

a. *Lost profits.* In awarding damages for "the contracted twelve rings and a set of spares reasonably anticipated based on past contracts with the [client]," the judge implicitly found that, had Mullen not violated the court order, Eldim more likely than not would have received the contract for those materials. There was evidence in the record to support this finding. The RFQ provided a short period of time during the Christmas season for Eldim and any other bidders to respond by January 2, 1996, to the new approach Mullen had developed in collaboration with the client during the noncompetition period. Eldim had received contracts with the client for similar products for the last six years. In these circumstances, lost profits reflecting lost opportunity are an appropriate measure of damages. See *Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould*, 359 Mass. at 277.

The judge was entitled to credit Eldim's evidence, which was based on previous contracts with the client for similar products, regarding the extent of its damages. Although lost profits are

often difficult to prove with precision, *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 407 (1992), " 'uncertainty in the assessment of damages is not a bar to their recovery' . . . [especially] where . . . [any] 'difficulties in determining damages arise in large part from [the defendant's conduct].' " *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 430 (1976) (citations omitted). "A reasonable approximation will suffice." *Ibid.*, quoting from *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 627 (1964).

b. *Reimbursement for noncompetition payments.* The judge ordered Mullen to reimburse Eldim for the noncompetition payments Eldim made to Mullen pursuant to the agreement. Mullen argues here, as they did at the hearing on their motion to amend findings and for new trial, that the judge had no authority to order these damages, because the payments were made prior to the court order at issue here. Mullen claims that Eldim received the value of these payments because Eldim made sales to the client during the period of the payments. The trial judge's response to this argument was to amend the pleadings sua sponte, pursuant to Mass.R.Civ.P. 15, 365 Mass. 761 (1974), to include the period covered by the earlier temporary injunction. We need not decide whether such amendment was permissible, because the judge did not abuse his discretion in requiring the reimbursement even without the amendment. See *Demoulas* v. *Demoulas Super Markets, Inc.*, 424 Mass. at 571. The judge stated that he was requiring the reimbursement of the noncompetition fees "because Mullen competed." It was Mullen's activities during the period of the injunction that deprived the plaintiff of the value of the noncompetition payments it had previously made. Eldim was entitled to be made whole.

c. *Attorney's fees.* "As matter of law, the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding." *Demoulas* v. *Demoulas Super Markets, Inc., supra.* Here the judge awarded the plaintiff $80,000 in attorney's fees, which he found were "reasonable." The basis for this award was a document entitled "Eldim damage summary" setting legal fees at that sum. Eldim's general manager testified that Eldim had already paid "at least half" of the $80,000, that he expected to pay the other half on receipt of an invoice, and that the amount was substantially less than he had paid for the arbitration proceedings and seemed reasonable. On appeal, Mullen argues that without evidence of hourly rates

and number of hours worked, there was no basis on which to award attorney's fees. They are correct. See *McInerney* v. *Massasoit Greyhound Assn., Inc.*, 359 Mass. 339, 352 (1971), for other "relevant considerations" in determining attorney's fees. On the other hand, Mullen did not address this issue at trial and only briefly argued at the hearing on their posttrial motion that "there was little, if any, scrutiny [in] the amount of attorney[']s fees . . . [concluding] that's an issue we can take up on appeal." Eldim complains that Mullen waived this issue for failing to comply with the requirements of Mass.R.A.P. 18(b), as amended, 425 Mass. 1602 (1997), but then fails to include any additional materials in a supplemental appendix or otherwise demonstrate prejudice. We therefore remand the award of attorney's fees to the Superior Court for further consideration consistent with *McInerney* v. *Massasoit Greyhound Assn., Inc.,* *supra* at 352, and cases cited. See *First Natl. Bank of Boston* v. *Brink*, 372 Mass. 257, 265-267 (1977).

Finally, Eldim seeks attorney's fees for this appeal. The cost of the appeal is part of the "pecuniary injury" Eldim suffered as a result of Mullen's disobedience of the court order. See *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. 758, 763 n.7 (1979). The authority to award attorney's fees for civil contempt "would ring hollow if it did not necessarily include a fee for the appeal." *Bonofiglio* v. *Commercial Union Ins. Co.*, 412 Mass. 612, 614 (1992) (G. L. c. 93A action), quoting from *Yorke Mgmt.* v. *Castro,* 406 Mass. 17, 19 (1989). Having for the most part prevailed on appeal, Eldim "may . . . submit [its] petition for [appellate] fees together with the necessary back-up material and details as to hours spent, precise nature of the work, and fees requested," see *Yorke Mgmt.* v. *Castro, supra* at 20, within fifteen days of the issuance of the rescript in this case. Because Eldim did not prevail on appeal on the issue of attorney's fees for the contempt proceeding, no fees will be allowed for presentation of its appellate argument on this point. See *Bonofiglio* v. *Commercial Union Ins. Co.*, *supra* at 614. Mullen will be given fifteen days to respond to Eldim's petition. *Yorke Mgmt.* v. *Castro, supra.*

6. *Conclusion.* The portion of the judgment awarding the plaintiff lost profits and reimbursement for the noncompetition payments and interest thereon is affirmed. The portion of the judgment composed of legal fees and associated interest is vacated, and the case is remanded to the Superior Court for

further action consistent with this opinion. The order denying Mullen's motion to amend the findings, or for a new trial, is affirmed. Attorney's fees for this appeal will be awarded as set out above and according to the procedure set out in *Yorke Mgmt.* v. *Castro*, *supra.*

*So ordered.*