NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-293

THE PATRIOT GROUP, LLC

vs.

STEVEN C. FUSTOLO & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial on a complaint for civil contempt, a judge of the Superior Court found that the defendant, Steven C. Fustolo, violated a 2012 permanent injunction that imposed certain spending limits on Fustolo's living expenses and required him to document his expenditures until he satisfied an outstanding $20.4 million judgment in favor of the plaintiff,

---

[1] Winchester Savings Bank was a trustee process defendant. The following defendants were joined solely on reach and apply claims:  James J. Fox & Company LLP, National Tax Institute, Inc., CPE Meetings, Inc., Terrace Hall Partners LLC, Five High Street LLC, Huntington Properties, Inc., Property Trust Corporation, Huntington Properties Holding Company, L.L.C., 23-25 Highland Avenue, LLC, Fustolo Development LLC, and Atlas Garden Supply LLC.  Fustolo CPE, LLC, was later added as a reach and apply defendant pursuant to the judgment on the contempt complaint.

the Patriot Group, LLC (Patriot).  A judgment entered that, among other things, ordered Fustolo to provide documentation of his and his wife's annual expenditures from 2012 forward, enjoined Fustolo and his wife from spending more than $7,000 per month on ordinary living expenses, and added a newly-formed entity, Fustolo CPE, LLC (Fustolo CPE), as a reach and apply defendant.[2]  By separate order, the judge also awarded Patriot $15,000 in attorney's fees.

On appeal, Fustolo argues that the judge erred in finding Fustolo in violation of the injunction (but not in contempt) both because the requirement that Fustolo provide annual documentation of his expenditures was not clear and unequivocal, and because Fustolo was not obligated to comply with the injunction during two bankruptcy stays entered in this matter. Fustolo also argues that the judge exceeded his authority by clarifying the injunction to require Fustolo to provide annual accountings dating back to 2012, by adding to Fustolo's wife and Fustolo CPE to the injunction, and by awarding attorney's fees to Patriot.  We affirm.

---

[2] Although Fustolo's notice of appeal also identifies a May 31, 2022 order for judgment, and an August 23, 2022 order on Patriot's motion to compel Fustolo's compliance with the order for judgment, we treat those two orders as subsumed in the judgment on the contempt complaint dated January 6, 2023.

Background.  We set forth those facts that are undisputed, as well as the facts found by the judge after trial.  We reserve certain facts for our later discussion.

1.  Underlying judgment and injunction.  Fustolo has been a certified public accountant (CPA) since the 1980s.  He has wholly owned and operated businesses involving real estate development, publishing, and continuing professional education for CPAs, attorneys, and other tax professionals.  In 2007, Fustolo created a company to hold and develop a property located in the city of Revere.  That development company secured a $13.6 million loan from Patriot, a private lender.  The company subsequently defaulted on the loan and Fustolo became liable under a personal guaranty.

In February 2010, Patriot brought an action in the Superior Court against Fustolo under the guaranty and named several companies that are owned by Fustolo as reach and apply defendants (Superior Court action).[3]  In May 2011, a separate and final judgment entered against Fustolo in the amount of $20.4 million.  Patriot then moved for entry of a reach and apply judgment and permanent injunction under G. L. c. 214, § 3 (6).  In April 2012, final judgment and a permanent injunction entered

_____

[3] For the names of the reach and apply defendants, see note 1, supra.

3

against Fustolo and the reach and apply defendants.  As relevant here, paragraphs two and four of the injunction read as follows:

"2.  That Steven C. Fustolo and his respective managers, agents, members, partners, nominees, representatives, servants, employees, attorneys, and all people in active concert or participation with them are <u>permanently restrained and enjoined</u> from directly or indirectly assigning, alienating, selling, transferring, pledging, encumbering, concealing or in any other manner, disposing of, diminishing, dissipating, re-directing or otherwise instructing the re-direction and/or misapplication of any and all intangible properties received by Steven C. Fustolo from the Reach and Apply Defendants, except to pay ordinary living expenses for mortgage, food and the like, <u>not to exceed $84,000 per year or a cumulative average of $7,000 per month</u>, to be documented to the Plaintiff on an annual basis, and to pay ordinary operating expenses for the operation of the Reach and Apply Defendants, including but not limited to real estate taxes, utilities, insurance premiums, payroll (excluding Steven C. Fustolo), payroll taxes, occupancy costs, and supplies, or as otherwise directed by this Court and from paying any monies directly or indirectly to any other person or entity created or controlled by Steven C. Fustolo;

. . .

"4.  That the Reach and Apply Defendants . . . and all of their respective managers, directors, officers, agents, partners, members, subsidiaries, nominees, representatives, servants, employees and attorneys, and each and every one of them, and all people in active concert or participation with them, <u>are permanently restrained and enjoined</u> from directly or indirectly paying money or any other form of compensation or dividend to or for the benefit of Steven C. Fustolo, or from altering, amending, modifying, hypothecating, assigning, alienating, selling, transferring, encumbering, concealing or in any other manner, disposing of, diminishing or dissipating the value of Steven C. Fustolo's beneficial, equitable, shareholder and/or ownership interests in the Reach and Apply Defendants.  However, the above Reach and Apply Defendants may advance funds to Fustolo in an amount not to exceed <u>$84,000 per year or a cumulative average of $7,000 per</u>

4

<u>month</u> to cover his personal living expenses as described above in paragraph 2, or to pay the Plaintiff."

2. <u>Bankruptcy matters</u>. Shortly after the injunction issued, in 2013, Patriot (and other creditors) brought a chapter 7 involuntary bankruptcy proceeding against Fustolo. In 2014, Patriot (and another creditor) commenced a related adversary proceeding against Fustolo, also in bankruptcy court, seeking to except certain debts from discharge or, in the alternative, deny Fustolo a discharge. After a six-day trial, the bankruptcy judge ultimately denied Fustolo's bankruptcy discharge.

While the bankruptcy matters were pending, two automatic stays were imposed in the Superior Court action pursuant to 11 U.S.C. § 362. The stays were in effect from May 2013 to January 2017, while the matter initially was pending before the bankruptcy judge, and from July 2018 to February 2019, after a remand by the United States Court of Appeals for the First Circuit.

3. <u>Contempt action</u>. a. <u>Proceedings</u>. After the first bankruptcy stay was lifted in 2017, Patriot filed a Superior Court complaint for civil contempt against Fustolo and the reach and apply defendants.[4] Patriot alleged, among other things, that Fustolo violated paragraph two of the injunction by spending in

_____

[4] As of May 2018, Fustolo had not made any payments toward the outstanding judgment to Patriot.

excess of $84,000 per year on ordinary living expenses and failing to provide documentation of same; Patriot also alleged that Fustolo violated paragraph four by transferring in excess of $84,000 per year from the reach and apply defendants or their successors to Fustolo.

During the proceedings, Fustolo took the position that he complied with the injunction based on his understanding that paragraph two only required him to document and limit his living expenses if he received intangible property (which, according to Fustolo, did not include cash payments) from the reach and apply defendants. Fustolo further argued that he complied with paragraph four because "money" did not include the repayment of loans that Fustolo previously had made to the reach and apply defendants, and paragraph four did not impose any documentation requirement.

A judge held three days of trial on the contempt complaint in May 2018. However, before the trial concluded, the second bankruptcy stay was imposed. After that stay was lifted, the trial on the contempt complaint resumed for two additional days before a different judge in April 2022 (hereinafter, the judge).[5]

_____

[5] The first judge had retired by the time that the trial resumed.

b.  Findings.  Following the trial, the judge found as follows.  Fustolo never provided Patriot with any report or disclosure of his expenditures traced to money that he received from the reach and apply defendants.  Moreover, despite having the expertise to do so, Fustolo also did not set up any system to track his expenses (ordinary living or otherwise) or the funds that he received from the reach and apply defendants after the injunction issued.  Instead, Fustolo, who had twenty-nine business bank accounts and nine personal accounts, comingled money from his companies with his personal accounts (including those held with his wife).  Like the bankruptcy judge, the judge found that "Fustolo used his businesses to promote fraud. . . . Fustolo took money from [reach and apply defendant CPE Meetings, Inc.] and other companies when he saw fit, ignoring the [injunction] that . . . required Fustolo to document expenses to Patriot."  In short, the judge found that Fustolo's failure to maintain records, books, or accounts precluded his creditors, like Patriot, from fully understanding his financial condition and business transactions.

Based on this conduct, the judge found that Fustolo violated the injunction by failing to document his monthly expenses to Patriot on an annual basis; however, the judge also found that Fustolo was not in contempt because the documentation

7

requirement concerning cash payments from the reach and apply defendants was not "clear and unequivocal." The judge reasoned that paragraph four of the injunction -- that limited the transfer of funds from the reach and apply defendants -- did not explicitly include the documentation requirement and the requirement was only incorporated through cross-reference to paragraph two -- that limited the transfer of intangible assets by the reach and apply defendants. Although the judge noted the obvious intent of the documentation requirement was to allow Patriot to verify that Fustolo had complied with the living expense limitations, he concluded that the proper course was to clarify the injunction to require Fustolo to document his living expenses for each year since the injunction issued.

Unlike the injunction's documentation requirement, the judge found that paragraph four did include a clear and unequivocal command that Fustolo was prohibited from receiving funds from the reach and apply defendants exceeding $84,000 per year or a cumulative average of $7,000 per month to cover his personal expenses as described in paragraph two, i.e., "mortgage, food and the like." The judge explained that he had "serious suspicions" that Fustolo had exceeded the spending limit and had "serious questions about the use of various entities to conceal assets or personal spending." However, the

8

judge found that Patriot was not able to prove a violation of the spending limit by clear and convincing evidence at that juncture through no fault of its own.  The judge deferred acting on that portion of the complaint until Fustolo furnished Patriot with the requisite documentation.[6]

c.  Order for judgment.  On May 31, 2022, the judge issued an order for judgment (the substance of which entered as a judgment on January 6, 2023).  The order required Fustolo to remedy his violation of the documentation requirement by providing Patriot on or before August 31, 2022, "with an accounting [demonstrating], on a yearly basis, beginning from April 19, 2012, the expenditures from all funds received by Fustolo, his wife, and anyone else acting in concert with him, and identify the specific source of the funds for each expenditure (e.g., from any Reach and Apply Defendant)."

The order also "clarified and modified" the injunction by setting forth the following conditions that applied prospectively:  Fustolo and his wife were restrained from directly or indirectly spending more than $7,000 per month on ordinary living expenses until the underlying judgment was

---

[6] Although the judge indicated that he intended to dismiss the portion of the contempt complaint alleging a violation of the spending limit without prejudice, the judgment deferred action on that portion of the complaint.

9

satisfied; Fustolo was required to provide a detailed and itemized description of the prior year's expenses with documentation on August 1st of each year; and Fustolo was prohibited from causing any entity he owned or controlled from paying him more than $7,000 per month subject to certain conditions. The order also set certain fines for any future violations of the above conditions, added Fustolo CPE as a reach and apply defendant, and permitted Patriot to file a fee petition.[7]

d. Attorney's fees. As authorized by the order for judgment, Patriot filed a petition with a supporting affidavit, seeking $104,080 in attorney's fees and $24,441.35 in costs. The judge awarded $15,000 in attorney's fees by order dated January 5, 2023. The judge reasoned that thus far, Patriot had only prevailed on the issues of the "failure to report and clarification of the court's earlier order."

Discussion. We review the judge's ultimate finding on the contempt complaint for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of

_____

[7] In August 2022, Patriot filed a motion to compel Fustolo's compliance with the order for judgment. The judge allowed the motion, concluding that Fustolo violated the requirement that he provide an accounting for the prior year on August 1, 2022.

10

fact for clear error.  See Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).

1.  Violation of injunction.  a.  Documentation requirement.  Fustolo first argues that the judge's decision was "internally inconsistent" because Fustolo could not be found in violation of the documentation requirement when that requirement was not clear and unequivocal.  Fustolo is correct that to support a finding of civil contempt, a plaintiff must prove by clear and convincing evidence that the defendant disobeyed "a clear and unequivocal command."  Birchall, petitioner, 454 Mass. 837, 853 (2009).  "Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt."  Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 708 (2019), quoting Birchall, petitioner, supra at 852.  It follows then that not every violation of an order constitutes contempt.  See Smith v. Smith, 93 Mass. App. Ct. 361, 363-364 (2018).

Here, the judge properly applied these principles.  He found that the injunction imposed a documentation requirement on Fustolo, but that the command as written "just barely" fell short of constituting a clear and unequivocal command at least as related to the cash payments from the reach and apply defendants.  Given that the language of the injunction was

11

imprecise, the judge was permitted to "comb relevant parts of the record to discern the authoring court's intention," and he did just that.  Negron-Almeda v. Santiago, 528 F.3d 15, 23 (1st Cir. 2008).  Consistent with the overall purpose of the injunction, the judge concluded that paragraphs two and four limited the monthly living expenses that Fustolo could receive from the reach and apply defendants.  The documentation requirement, in turn, was intended to ensure Fustolo's compliance with the spending limit and to provide verification of same to Patriot (beyond Fustolo's self-reports of compliance).  As the judge ultimately found, and we agree, "[t]here is no reason to think that an order, so drafted, intended to allow the serious loophole that Fustolo now seeks to exploit."

For these reasons, the judge did not err in finding that Fustolo violated the injunction, but that the violation did not amount to contempt.[8]  This is so even if, as Fustolo argues, his noncompliance was in good faith based on his own interpretation

---

[8] To the extent Fustolo asserts that he voluntarily complied with the documentation requirement even though he was not required to do so, the judge found to the contrary based on Fustolo's testimony, and we find no basis to set aside that finding.  See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509-510 (1997) (trial judge in best position to judge weight and credibility of evidence).

of the injunction.  See Wooters v. Wooters, 74 Mass. App. Ct.

839, 844 (2009) (finding husband in violation but not in

contempt of alimony order where order not clear and unequivocal,

and husband had good faith belief of compliance).[9]

b.  Bankruptcy stays.  Fustolo next argues that he was not

required to comply with the injunction during the pendency of

the bankruptcy stays.  This argument fails as a matter of law.

Title 11 U.S.C. § 362(a)(2), imposes a stay of the

"enforcement" of any judgment against a debtor that was obtained

before the commencement of a bankruptcy proceeding.  See Ritzen

Group, Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 37 (2020)

("filing a petition for bankruptcy automatically 'operates as a

stay' of creditors' debt-collection efforts outside the umbrella

of the bankruptcy case" [emphasis added; citation omitted]).

"The purpose of the automatic stay is 'to relieve a debtor of

collection proceedings which would nullify the Bankruptcy Code's

objective of orderly liquidations or reorganizations which treat

creditors equally'" (citation omitted).  Beverly v. Bass River

Golf Mgt., Inc., 92 Mass. App. Ct. 595, 599 (2018).  Thus,

"[t]he automatic stay is designed to effect an immediate freeze

---

[9] Because Fustolo was not found in contempt, we need not pass on "the kind and degree of intent that must be shown to support a judgment of contempt" against an individual, as opposed to a corporate, defendant.  O'Connell v. Greenwood, 59 Mass. App. Ct. 147, 150 n.3 (2003).

13

of the status quo." Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991).

Contrary to Fustolo's argument, the stay does not have the effect of relieving a debtor of his obligations under an outstanding judgment. Instead, the automatic stay simply bars a creditor from pursuing any "collection efforts against the debtor or the debtor's property." Black's Law Dictionary 1709 (11th ed. 2019) (defining "automatic stay"). If the discharge is denied or the trustee abandons the property at issue, and the stay is lifted as a result, "title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously" (citation omitted). Barletta v. Tedeschi, 121 B.R. 669, 673 (N.D.N.Y. 1990). See 11 U.S.C. § 362(c)(2). Cf. In re Wilton Armetale, Inc., 968 F.3d 273, 284 (3d Cir. 2020) (if trustee abandons derivative claim, creditor's right to pursue claim "spring[s] back to life" [citation omitted]). Accordingly, we discern no error in the judge's conclusion that once the bankruptcy stays were lifted, Patriot was free to pursue a claim that Fustolo violated the injunction by failing to satisfy the documentation requirement and spending limit, even during the stays.

2. Clarification and enforcement of injunction. Fustolo next argues that the judge exceeded the scope of his authority

14

by clarifying the injunction to require Fustolo to document his annual expenses from 2012 to 2022, and by modifying the injunction to expressly include Fustolo's wife, Fustolo CPE, and other nonparties.  We address each argument in turn.

a.  Documentation of annual expenses.  "'The purpose of civil contempt proceedings is remedial,' and the formulation of the remedy is within the judge's discretion."  Eldim, Inc. v. Mullen, 47 Mass. App. Ct. 125, 129 (1999), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 571 (1997).  "[W]hile judges will not read into an order additional terms, judges will not allow a party to do indirectly what an order makes clear he cannot do directly" (citation omitted).  Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation, 424 Mass. 430, 449 (1997), abrogated on other grounds by Birchall, petitioner, 454 Mass. at 852-853.  A judge may clarify a judgment on a contempt complaint.  See Colorio v. Marx, 72 Mass. App. Ct. 382, 385 (2008).

Here, the judge ordered Fustolo to provide documentation of his expenditures from 2012 forward.  Although Fustolo characterizes this remedy as "retrospective," it is remedial and designed to determine whether Fustolo violated the injunction's clear and unequivocal limit on the amount of funds that could be advanced to Fustolo to cover personal expenses.  See Labor

15

Relations Comm'n v. Fall River Educators' Ass'n, 382 Mass. 465, 476 (1981) ("Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through the payment of money for damages caused by past acts of disobedience" [citation omitted]).  Indeed, the judge expressed concern that Fustolo was not in compliance with the spending limit and cited several compelling reasons in support.  For example, the judge noted large, unexplained deposits and withdrawals of cash, and numerous expensive purchases made by Fustolo, including for gemstones and a country club golf membership.  The judge also found that as of 2014, Fustolo's monthly household living expenses were approximately $20,000 (which, if substantiated, placed Fustolo well on track to exceed the annual $84,000 limit).  Notably, the judge also found that Fustolo -- and not Patriot -- was able to provide the documentation necessary to ascertain whether Fustolo violated the spending limit.

The judge was within his discretion to require that Fustolo provide that documentation where it was Fustolo's obligation to ensure that he complied with the spending limit.[10]  See Eldim,

---

[10] We also reject Fustolo's argument that the judge exceeded his authority by clarifying the documentation and spending requirements prospectively.  See Colorio, 72 Mass. App. Ct. at 385.

16

Inc., 47 Mass. App. Ct. at 128 ("Where an injunction is in effect, the party bound by the order is responsible for ascertaining whether any proposed actions are among the proscribed activities. It is not the plaintiff's obligation to police the decree but the defendant's obligation to make certain he does not violate it" [citation omitted]). See also New England Novelty Co. v. Sandberg, 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944) (judge has power to compel obedience to his decrees and punish those who obstruct or degrade administration of justice). Cf. Judge Rotenberg Educ. Ctr., Inc., 424 Mass. at 449 ("contempt finding is appropriate where 'steps are taken to subvert the decree'" [citation omitted]).[11]

b. Inclusion of Fustolo's wife, Fustolo CPE, and other nonparties. "An injunction is binding on the parties 'and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.'" Mohamad v. Kavlakian, 69 Mass. App. Ct. 261, 265

---

[11] Fustolo's argument that it is impossible for him to comply with the documentation requirement for past years is premature. As the judge noted in a September 2022 order, impossibility might be a defense to a contempt finding, but litigation of that issue has yet to occur. See, e.g., Commonwealth v. One 1987 Ford Econoline Van, 413 Mass. 407, 412 (1992).

Similarly, to the extent that Fustolo contests the potential fines for future noncompliance included in the judgment on the contempt complaint, none of the orders before us impose such a fine on Fustolo.

17

(2007), quoting Mass. R. Civ. P. 65 (d), 365 Mass. 832 (1974).

Indeed, even a nonparty may be held in contempt if that person

"counsels or aids a party in disobeying a decree" (citation

omitted). Bird v. Capital Site Mgt. Co., 423 Mass. 172, 178

(1996).

The judge enjoined, among others, Fustolo's wife from

"directly or indirectly spending more than $7,000 per month

. . . on ordinary living expenses for food, mortgage and the

like until the judgment in this case is paid," starting in May

2022. On the issue of notice, the evidence was that Fustolo's

wife was shown a copy of the original injunction during a

deposition in 2012, and she testified at the contempt

proceedings in May 2018.

Evidence also was presented that Fustolo's wife was an

active participant in Fustolo's financial affairs. Fustolo and

his wife lived together and shared expenses. Fustolo's wife

primarily paid the household bills using checks from her own

accounts or joint accounts shared with Fustolo. The wife

received funds in her accounts from unknown sources, including,

for instance, $119,000 that Fustolo deposited into his wife's

accounts during a one-year period between 2012 and 2013.

Fustolo also comingled money from the reach and apply defendants

with personal accounts that he shared with his wife; the judge

18

found that such use of the businesses "promote[d] fraud." Moreover, Fustolo's wife helped Fustolo with his seminar business for over a decade, and Fustolo, on behalf of Fustolo CPE, entered into an agreement with Fustolo's wife to compensate her for marketing and communications work that she did for the company. In light of this evidence, the judge did not err in including Fustolo's wife in the judgment, particularly where the injunction imposed a limit on spending for ordinary living expenses. See Bird, 423 Mass. at 178-179 (wife who received and spent proceeds in violation of attachment order may be held in contempt if aware of order).

With respect to Fustolo CPE, Fustolo argues that Massachusetts did not have jurisdiction over the Delaware company. To the contrary, there are sufficient contacts between Fustolo CPE and Massachusetts to satisfy both the long-arm statute, G. L. c. 223A, § 3 (a), and due process. See, e.g., Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712-713 (1st Cir. 1996), cert. denied, 20 U.S. 1155 (1997).

The judge found that Fustolo formed Fustolo CPE around December 2013, to carry on the same seminar business of two previously named reach and apply defendants, CPE Meetings, Inc., and National Tax Institute, Inc. As noted by the judge, the bankruptcy judge found based on "'several badges of fraud,'

19

[that] Fustolo 'transferred the business model to the new entity in an attempt to defraud creditors.'"

Fustolo CPE provided income to Fustolo at some points in time.  For instance, the judge found that approximately $1.9 million flowed through Fustolo CPE between December 2013 and December 2015, and Fustolo paid himself $100,000 from Fustolo CPE in 2015 alone without accounting for payments to pay down his wife's credit card debt.

The company's sole owner is Fustolo, a Massachusetts resident, and the company holds a bank account in Massachusetts. See Walden v. Fiore, 571 U.S. 277, 285 (2014) (physical entry into State by agent relevant contact between defendant and forum).  Fustolo, on behalf of the company, also entered into a contract with Fustolo's wife, another Massachusetts resident, for marketing services.  Moreover, the company entered an appearance in a parallel action in the Superior Court, not for the limited purpose of challenging jurisdiction.  Given this evidence, Fustolo CPE was properly added as a reach and apply defendant under G. L. c. 214, § 3 (8), for the purposes of satisfying the outstanding judgment against Fustolo.[12]

_____

[12] General Laws c. 214, § 3 (8), grants the Superior Court original and concurrent jurisdiction over the following:

3.  Attorney's fees.  Finally, Fustolo argues that Patriot was not entitled to attorney's fees in the absence of a contempt finding.  As a general rule, a "successful" or "prevailing" litigant in a contempt action is entitled to attorney's fees. Ventresca v. Town Manager of Billerica, 68 Mass. App. Ct. 62, 66 (2007).  Here, the judge found that Patriot prevailed only in demonstrating that Fustolo violated the documentation requirement and in obtaining clarification of the injunction. Because most of the trial and preparation related to Patriot's other claims, the judge awarded Patriot just under fifteen percent of Patriot's requested fees.

The partial award of attorney's fees was appropriate because Patriot succeeded in obtaining an order directing Fustolo to provide accountings of his annual expenditures so that Patriot can assess whether Fustolo adhered to the spending limit in the injunction.  The judge was within his discretion to award fees for that request.  See Police Comm'r of Boston v.

"Actions to reach and apply in payment of a debt any property, right, title or interest, real or personal, of a debtor, liable to be attached or taken on execution in a civil action against him and fraudulently conveyed by him with intent to defeat, delay or defraud his creditors, or purchased, or directly or indirectly paid for, by him, the record or other title to which is retained in the vendor or is conveyed to a third person with intent to defeat, delay or defraud the creditors of the debtor."

21

Gows, 429 Mass. 14, 18-19 (1999), and cases cited (fees may be awarded to party even when no finding of contempt).

Conclusion. The judgment on the complaint for contempt dated January 6, 2023, is affirmed. The order on the petition for attorney's fees and costs dated January 5, 2023, is affirmed.

So ordered.

By the Court (Meade, Blake & Desmond, JJ.[13]),

Assistant Clerk

Entered: May 28, 2024.

---

[13] The panelists are listed in order of seniority.