NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1451

CAROL L. HORVITZ, trustee,[1] & another[2]

vs.

EVAN WILE, individually and as trustee.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Carol L. Horvitz, trustee of the Edgewater House Trust, and Jeffrey E. Horvitz, filed a complaint in the Superior Court against defendant Evan Wile, individually and as trustee of the West Street Realty Trust, seeking an order of civil contempt against the defendant following the defendant's alleged violation of a permanent injunction.[4] After a bench trial, the judge issued a judgment declaring the defendant

---

[1] Of the Edgewater House Trust.

[2] Jeffrey E. Horvitz.

[3] Of the West Street Realty Trust.

[4] The injunction followed "a long history of litigation" that is detailed by the Supreme Judicial Court in Rattigan v. Wile, 445 Mass. 850, 851-855 (2006).

violated the permanent injunction and awarding the plaintiffs attorney's fees and costs in prosecuting the contempt complaint. On appeal, the defendant argues that (1) the plaintiffs failed to demonstrate that the defendant disobeyed the injunction to support a contempt finding, and (2) even if there was an event of contempt, the defendant's contemptuous conduct was not willful. The defendant also contends that the award of attorney's fees was error. We affirm.

Background. The defendant purchased the property adjacent to the plaintiffs' property in 1992.[5] Between 1999 and 2003, the defendant dumped construction debris along the boundary between the two properties. As the plaintiffs erected barriers to block the debris from their view, the defendant responded by rearranging the debris so that it would remain visible from the plaintiffs' property. The defendant also took several other actions with the intent to annoy or harass the plaintiffs. There were reported catcalls from the defendant's property to swimmers in the plaintiffs' pool; the defendant placed portable toilets near the boundary line and close to the plaintiffs' pool such that offensive odors emanated around the pool; and the defendant used an area close to the property line as a helicopter landing zone, causing debris to blow onto the

_____

[5] The facts leading up to the 2006 permanent injunction are adopted from Rattigan, 445 Mass. at 851-855.

2

plaintiffs' property during landings.  As a result of the defendant's actions, a permanent injunction was issued, and modified by the Supreme Judicial Court:

> The defendant is permanently enjoined from unreasonably interfering with the use and enjoyment of the plaintiffs' property.  Without limiting the scope of the foregoing prohibition, the defendant shall not leave unattended any objects more than six feet in height within forty feet of the plaintiffs' boundary line, such as tents, portable toilets, construction and industrial materials, trailers, and warning signs, except reasonable vegetation.  The defendant shall not operate, or cause to be operated, a helicopter on his property or within the zone of interest above the property.  So long as the above provisions are not violated, the defendant shall not be enjoined from hosting gatherings on his property that he personally attends.  This injunction is not intended to impede the defendant's ability to build on the property at issue; if he obtains lawful authority to build, he may seek modification of this injunction in the Superior Court.

Rattigan v Wile, 445 Mass. 850, 864 (2006).

In or around 2022, the defendant entered an agreement with a construction company who excavated and poured a residential foundation on his property.  As a result of the work, a pile of excavated dirt and sand, which was about fifteen feet high and twenty-five feet in diameter, was placed close to the property line between the defendant's and plaintiffs' properties.  On April 11, 2023, the plaintiffs' counsel notified the defendant's counsel that the pile was "causing a nuisance condition" and requested its removal.  On May 12, 2023, after the excavation pile had not been removed, the plaintiffs proceeded to file a verified complaint for civil contempt against the defendant.

3

The pile was removed on or about May 25, 2023, one day before the scheduled contempt hearing. After a trial on July 26, 2023, a Superior Court judge found in favor of the plaintiffs and subsequently allowed, in part, the plaintiffs' motion for attorney's fees. In support of his order, the judge concluded that "[the defendant] clearly disobeyed the permanent injunction and he was apparently unwilling to take remedial action until he knew court intervention was imminent." A judgment incorporating the finding of contempt and award of attorney's fees entered on October 23, 2023, and the defendant appealed.

Discussion. 1. Contempt. "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to coerce the defendant into compliance with an injunction or compensate the complainant for losses stemming from the defendant's noncompliance with an injunction" (citation and quotations omitted). Taggart v. Lorenzen, 587 U.S. 554, 560-561 (2019). "[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 838-839 (2009). We review the judge's finding of civil contempt for abuse of discretion. See Voorhis v. Relle, 97 Mass. App. Ct. 46, 54 (2020).

The defendant argues for a narrow construction of the injunction, asserting that it prohibits only the unreasonable

4

interference with use and enjoyment of the plaintiffs' property, and that the subsequent language in the Supreme Judicial Court's opinion is merely illustrative of potential violations. We disagree.

The injunction's language forbidding the defendant from "leav[ing] unattended any objects more than six feet in height within forty feet of the plaintiffs' boundary line" is a "clear and unequivocal command" and not merely illustrative. See Birchall, petitioner, 454 Mass. at 839. The express language of the injunction, coupled with the defendant's knowledge and involvement in the incidents leading up to the injunction, renders the injunction a clear and unequivocal command, sufficient to support a contempt proceeding. The injunction put the defendant on notice that leaving objects that are more than six feet in height within forty feet of the plaintiffs' property line would subject him to citations for contempt. See Eldim, Inc. v. Mullen, 47 Mass. App. Ct. 125, 128 (1999) ("At the very least, [the defendant] was on notice that certain actions could constitute the basis for contempt. . . . Where an injunction is in effect, the party bound by the order is responsible for ascertaining whether any proposed actions are among the proscribed activities" [citation and quotations omitted]). The meaning of this aspect of the injunction was not ambiguous and not susceptible to an interpretation different from that found

5

by the judge. See Demoulas v. Demoulas Supermkts., Inc., 424 Mass. 501, 567 (1997) (affirming contempt judgment where phrase "'ordinary course of business' requires some legal interpretation . . . [but] the injunction [containing the phrase] was not so ambiguous a command as to be incapable of being enforced through a contempt order"); Allen v. School Comm. of Boston, 400 Mass. 193, 194 (1987) (contempt proper where defendant had no reasonable basis for doubting meaning of judge's order); Labor Relations Comm'n v. Boston Teachers Union, Local 66, 374 Mass. 79, 89 (1977) (contempt appropriate where plain meaning of terms put defendants on notice that certain acts would be basis for contempt citations); Coyne Indus. Laundry of Schenectady, Inc. v. Gould, 359 Mass. 269, 275-276 (1971) (defendant properly held in contempt where restraining order term not ambiguous but "if the defendant saw the decree as ambiguous . . . he could have sought clarification from the court before he engaged in the questionable conduct"). Thus, the judge did not err in concluding that the defendant disobeyed the injunction by leaving a mound of excavated sand and dirt that was fifteen feet in height and within seven feet of the plaintiffs' property line.[6]

---

[6] Although the injunction expressly permitted the defendant to seek a modification of the injunction, he did not seek a modification until after the contempt judgment was issued against him. See Rattigan, 445 Mass. at 864.

The defendant further argues that even if his conduct did violate the injunction, it did not amount to a contemptuous act because it was not willful.  We disagree.  The judge found the defendant "clearly disobeyed the permanent injunction" and was "unwilling to take remedial action."  These findings reflect a finding of willfulness and were not an abuse of discretion.  See Voorhis, 97 Mass. App. Ct. at 54.  The record demonstrates that while the defendant did not place the mound near the plaintiffs' property line himself, he maintained control over his property and he allowed the mound to remain there for three months, and an additional six weeks after he was notified by the plaintiffs to remove it.[7]  The defendant's willfulness is further demonstrated by the fact that the defendant moved the mound on or about the day before the judge's first hearing on the plaintiffs' contempt complaint.

2.  Attorney's fees.  "[T]he trial judge in contempt proceedings has broad discretion to fashion remedies."  Mills v. Mills, 4 Mass. App. Ct. 273, 278 (1976).  A contempt judgment may include an award of reasonable attorney's fees and other litigation costs involved in enforcing the defendant's failure to comply with the injunction.  See Manchester v. Dep't of Envtl. Quality Eng'g, 381 Mass. 208, 216 (1980).  Given the

_____

[7] The mound was created while construction work was being done under the defendant's building permit.

7

judge's broad discretion in calculating attorney's fees, and his thoughtful examination of the relevant factors in reducing the fees sought by the plaintiffs, see <u>Twin Fires Inv., LLC</u> v. <u>Morgan Stanley Dean Witter & Co</u>., 445 Mass. 411, 429-430 (2005), we conclude he did not abuse his discretion.[8]

<u>Judgment affirmed</u>.

By the Court (Englander,
Hodgens & Smyth, JJ.[9]),

Clerk

Entered:  August 26, 2025.

---

[8] We decline to award attorney's fees for the appeal.  See G. L. c. 231, § 6F.

[9] The panelists are listed in order of seniority.